**People of the State of Illinois, Plaintiff-Appellant, v. Jessie L. Williams, Defendant-Appellee.**

Gen. No. 68–81.

Third District.

November 10, 1969.

Ronald E. Boyer, Assistant State's Attorney of Iroquois County, of Watseka, for appellant.

Robert L. Dannehl, Bell, Smith & Dannehl, of Watseka, and Kenneth R. Shorts, of Waukegan, for appellee.

ALLOY, J.

This cause is before us on an appeal by the People of the State of Illinois, from a ruling of the trial court granting motion of defendant, Jessie L. Williams, to suppress a blood test. Defendant Williams was charged with driving while under the influence of intoxicating liquor as defined in Section 47 of the Uniform Act Regulating Traffic on Highways (1967 Ill Rev Stats, c 95½, § 144). Section 47 was adopted in 1967 by act of the legislature and the section made a number of changes in the former statute with regard to the offense of driving while intoxicated. Section 47(c) provided:

"Upon the trial of any action or proceeding arising out of acts alleged to have been committed by any person while driving or in the actual physical control of a vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his breath, blood, urine, saliva, or other bodily substance is admissible, as provided hereinafter in this paragraph (c) and the result of any such analysis shall give rise to the following presumptions:"

The section later specifies that if there was less than .05% of alcohol in the blood, it is presumed that there was no intoxication; if over .05% and less than .10%, such evidence can be considered with other evidence of intoxication, but there is no presumption; if there was over .10% of alcohol in the blood, intoxication is presumed. The portion of Section 47(c) which is the basis of the problem causing this appeal provides:

"Evidence based upon a chemical analysis of blood, urine, breath or other bodily substance shall not be admitted unless such substance was procured and such analysis made with the consent of the person as provided for in Section 47.1 of this Act, whose bodily substance was so analyzed.

"The foregoing provisions of this paragraph (c) shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not defendant was under the influence of intoxicating liquor."

In Section 47(d) there is a provision for standards to be used in making blood or breath tests. In Section 47(e) it is provided that when a person was not capable of refusing to take a test under Section 47.1 of the Act,

only a physician should administer the test when such test was requested by a law officer. Section 47(g) provided for furnishing the test results to the person submitting to the test. Section 47(h) provided that it was not possible to introduce evidence of a refusal to take the test under Section 47.1 in a similar criminal proceeding, but it should be presented at a hearing to suspend a driver's license. Section 47(i) established the penalties.

The legislature, however, did not pass Section 47.1 referred to in the above Section 47. The record discloses various bills passed through the Illinois Senate and the Illinois House, and as such bills passed, the Senate passed Section 47 referred to, apparently on the assumption that the Illinois House was going to pass 47.1. On that same day, however, the House failed to pass Section 47.1. The record shows that Section 47.1 contained the implied consent provisions requiring that anyone using the Illinois Highways impliedly consented to taking the blood test if so requested. Section 47 was, however, passed by the Senate with the reference to Section 47.1 and was never modified or amended to delete the references to Section 47.1.

Defendant in the cause before us demanded a jury trial and after the jury was selected but before any evidence was offered, defendant moved to suppress any evidence of a blood test which he alleged would be offered into evidence by the State. Defendant argued that under Section 47(c) of the Statute there was reference to a blood test being made "with the consent of the person as provided for in Section 47.1 of this Act." Defendant argues that since 47.1 was not passed, this made section 47(c) invalid. In the cause before us, so far as the record discloses, defendant has made no contention that his consent was obtained fraudulently or that he had not consented to the test, but he argues solely that any evidence of a blood test should be suppressed on the

basis of the contended invalidity of Section 47(c) (by reason of the reference to 47.1 which was never passed). No procedural questions are raised as to the propriety of the motion and the trial court granted defendant's motion to suppress the blood tests, stating that Section 47 provided that in order for evidence of a blood test to be admitted, such test had to be made with the consent of the person under Section 47.1, and due to the fact that there was no Section 47.1, there was no way the court could interpret Section 47. As indicated previously, the State has appealed this ruling by the trial judge and the cause below was continued until disposition of such issue in this Court.

On appeal in this Court, the State contends that the trial court should have denied the motion to suppress the evidence of the blood test since the legislative history of Section 47 discloses that the provision designated as Section 47.1 was erroneously and inadvertently omitted from the act in the process of amendment. It is contended that the legislature had no intention to define or restrict the means by which a person's consent was to be obtained, but that, on the contrary, the legislature was attempting to adopt in Section 47.1 an implied consent doctrine whereby a person impliedly consented to a chemical test by the fact that he chose to use the State highways. It is contended that since the implied consent doctrine was not adopted, and although the legislature neglected to delete the references to Section 47.1 from Section 47, the trial court should have adopted the rule of statutory construction which required that such words referring to Section 47.1 should be disregarded and treated as surplusage. The consequence would be that treating the words as surplusage would make the provision completely sensible and leave the word "consent" to be interpreted in its ordinary common-law meaning.

The basic question, therefore, is whether it was the intention of the legislature to pass Section 47, which dealt with driving while intoxicated, only in the event that Section 47.1 was also passed, or whether the reference to Section 47.1 was of such character that it can be treated as surplusage. In People ex rel. Roan v. Wilson, 405 Ill 122, 127–8, 90 NE2d 224, the Supreme Court of this State outlined certain rules relating to statutory construction which are applicable where the court said:

> "The primary aim of statutory construction is to ascertain the legislative intent by examining not only the language employed, but the evil to be remedied and the end to be obtained. (Schoellkopf v. DeVry, 366 Ill 29.) Rules of interpretation are resorted to for the purpose of resolving ambiguities, and the entire section and act must be read together and so construed as to make it harmonious and consistent in all its parts. (Wells Brothers Co. v. Industrial Com., 285 Ill 647.) This court is bound to give meaning to each word, clause and sentence. (People ex rel. Cameron v. Flynn, 265 Ill 414.) The section must be interpreted according to its intent and meaning, and reasonably, so as to accomplish its general object. (People ex rel. Akin v. Kipley, 171 Ill 44.) In interpreting statutes, words are presumed to be used in their ordinary meaning, and it is proper, in case of ambiguity, to consider the context to determine the meaning in which they are used. (Board of Education v. Morgan, 316 Ill 143.) Further, it is the province of the legislature to enact the laws and that of the courts to construe them."

As we look to the legislative history of Section 47, we conclude that such inquiry makes apparent the intention of the legislature to enact Section 47 into law irrespective of whether Section 47.1 was adopted or not. Section 47 was first passed in 1961. The 1961 act provided

(in 47(b)) that upon a trial, evidence of a blood or breath test was admissible and the statute set forth several presumptions based upon the percent of alcohol in the blood. It provided that if less than .05% was found there was no indication of alcoholic intoxication, that between .05% and .15% there was no presumption of such intoxication, and that if over .15% it was presumed that the person concerned was intoxicated. The 1967 Act amended and revised Section 47 by changing the percentages from .15% to .10% and Section 47 was also expanded to provide more expressly how the tests were to be administered. Section 47.1 which was proposed, dealt with implied consent, but there is no indication that such provision was so closely associated with the basic provisions of Section 47, that there was a legislative intent that Section 47 should not be passed or become effective in the event Section 47.1 failed to pass. We note that the provisions of Section 47 under the 1961 Act are substantially the same provisions as Section 47 under the 1967 amended Act. The chief changes are the lower alcohol percentages in the 1967 statute and a change in the procedure for taking tests. The 1961 Act had been in operation for six years and there is nothing to show the legislature intended to revoke the provisions embodied in the former Section 47 simply because the additional Section 47.1, (which dealt only with implied consent), was not incorporated in the Act. Section 47, as passed in 1967, could be treated as a complete Act which provided for penalties for certain violations. As a consequence, we believe that the reference in Section 47 to Section 47.1 may be regarded as surplusage.

In Klein v. Department of Registration and Education, 412 Ill 75, 105 NE2d 758, the court was concerned with the question of legality of the Illinois Optometric Practice Act passed in 1951. In that Act reference was made to a "scheme or plan" in which performance of optometric service would be taken with another person, firm or cor-

poration known to be advertising in a manner contrary to the provisions of the Act, etc. It was contended that the words "scheme or plan" were so vague that the reference was not capable of clarification and thus rendered the entire act invalid. The Supreme Court stated (at Page 86):

> "The words 'scheme or plan' may, however, be omitted from the provision without affecting its meaning, which is to prevent a registered optometrist from practicing optometry in conjunction with another person, firm or corporation known to be advertising in a manner contrary to the provisions of the Illinois Optometric Practice Act, or otherwise violating the laws of the State of Illinois concerning the practice of optometry. If the main intent of the statute can be collected from the statute, words may be modified or altered, declared surplusage or even supplied so as to obviate any repugnancy or inconsistency with the legislative intent. (People ex rel. Simpson v. Funkhouser, 385 Ill 396.) By treating the words 'scheme or plan' as surplusage in this case, the intent of the legislature may validly be given effect."

We feel, as did the court in the Klein case referred to, that if the intent of the legislature is clear from a reading of the statute, then certain words in the statute which are inconsistent with, repugnant, or unnecessary to the express intent of the Act may be regarded as surplusage. We feel that the reference to Section 47.1 in the statute should have been treated as surplusage.

We are aware of the rule of statutory construction that the court should give meaning to each word, clause and sentence in a statute, but such rule of construction cannot be applicable to the situation in the case before us where reference is made to another portion of a statute which was not enacted into law by the legis-

lature. The only manner in which reference to Section 47.1 could be given any meaning would be to say that the passage of Section 47 was conditioned upon Section 47.1, which we have indicated was obviously not the legislative intent. As the Supreme Court noted in Moran v. Katsinas, 16 Ill2d 169, 157 NE2d 38, at 175:

> "The legislature is not to be presumed to have intended to enact an ineffective law."

It is obvious that the contention of the defendant in this cause, which was accepted by the trial court, would make Section 47 which was passed in 1967, totally ineffective. This was obviously not the intention of the legislature. Defendant contends that the rule of legislative construction that requires a criminal statute to be construed strictly in favor of the accused and against the State would have application in the cause before us. We do not agree with such interpretation. In the cause before us the question is whether 47.1 is to be treated as surplusage or whether such reference should operate to render Section 47 inoperative or invalid. The theory behind the rule of strict statutory construction favoring a defendant in criminal cases is to safeguard the rights of the accused and not to defeat the objective intent of the legislature (People v. Kirkrand, 397 Ill 588, 74 NE2d 813). In the instant case, the rights of defendant are safeguarded by finding that Section 47 is valid even though Section 47.1 was not passed. Under Section 47, defendant cannot be forced to submit to a blood test without his consent. Section 47 of the 1967 Act refers to defendant's consent under Section 47.1, and since there is no Section 47.1, the question of consent then becomes one which must be determined under the common law. In People v. Knutson, 17 Ill App2d 251, 147 NE2d 461 (which case was decided before the 1961 amendment of Section 47) the court held that evidence of an intoximeter test which was taken by force or by

deceit practiced on the defendant, would not be admitted in evidence. In such case, the question of the consent which was required from defendant was left to the common law. The court also in that case stated that evidence of defendant's refusal to take the intoximeter test was also not admissible. Consequently, under our determination that Section 47 of the 1967 Act is valid, the question of consent by the defendant must be determined under authority of such cases as the Knutson case and the rights of a defendant are clearly safeguarded.

Another contention which is advanced is that the court would be legislating in the field if Section 47.1 was held to be surplusage. This contention is untenable. The court is merely stating that Section 47 is a valid statutory enactment without the passage of Section 47.1. It is saying simply that Section 47.1 is not essential for an interpretation of Section 47. The court is not setting up statutory requirements for consent. The question of consent is left for common-law interpretation. No words are actually being supplied by the court but the sole effect of this decision is to eliminate some of the words in the Statute, which obviously have no effect, and which were not intended by the legislature to be a basic condition for the operation of Section 47 as a whole. It is also contended that if the reference to Section 47.1 was an oversight, the legislature can correct such oversight at its next session. We agree that this is so but believe that the court should give recognition to Section 47 by omitting references to Section 47.1 which were inadvertently included. If we were to conclude otherwise, the State of Illinois would be left without any statute covering this matter until the legislature has an opportunity to meet again to correct what may have been a clerical error.

We, therefore, conclude that the order of the Circuit Court of Iroquois County was improper in not treating the reference to Section 47.1 as surplusage. The order

of the Circuit Court of Iroquois County allowing the defendant's motion to suppress evidence of any blood test of defendant was in error. Such order is reversed and this cause is remanded to the trial court with directions to vacate the order allowing the motion to suppress herein referred to and to proceed in such cause in accordance with the views expressed in this opinion.

Reversed and remanded with directions.

STOUDER, P. J. and RYAN, J., concur.