THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* GAINES SELF, Defendant-Appellee.

(No. 72-201;

Third District—December 29, 1972.

L. E. Ellison, State's Attorney, of Morrison, for the People.

Donald Blodgett, of Rock Falls, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by the people of the State of Illinois from an order of the circuit court of Whiteside County which granted the pretrial mo-

tion of Gaines Self suppressing as evidence, findings or results of a chemical analysis to determine the alcoholic content of defendant's blood. The State had planned to use the results of the chemical analysis as evidence against Gaines Self for the purpose of proving his commission of the crimes of involuntary manslaughter, reckless homicide, or operating a motor vehicle while under the influence of intoxicating liquor.

■■ Defendant Gaines Self was involved in an automobile accident which resulted in the death of an individual. After the accident he was brought to the hospital in an ambulance where, according to the stipulation of the parties, a specimen of his blood was removed by a qualified technician under the direction of a licensed physician, in compliance with the regulations of the Department of Public Health of the State of Illinois for withdrawal of blood. It was also stipulated that defendant did not consent to the withdrawal or analysis of blood to determine blood alcohol content and that he was incapable of refusing such action within the meaning of chapter 95½ Ill. Rev. Stat., sec. 11—501(e). The parties also stipulated that the Illinois State Trooper who requested the taking of the blood sample had probable cause to believe that defendant may have been intoxicated. In absence of statutory provision to the contrary, it is apparent that results of a blood test would have been admissible in evidence notwithstanding defendant's inability to consent to the extraction of the blood. (*Breithaupt v. Abram,* 352 U.S. 432, 1 L.Ed.2d 448, 77 S.Ct. 408; *Schmerber v. California,* 384 U.S. 757, 16 L. Ed.2d 908, 86 S.Ct. 1826.) The issue which is presented on appeal, therefore, is whether the provisions of chapter 95½ Illinois Revised Statutes, sec. 11—501 upon which defendant relies and pursuant to which the circuit court order was entered actually precludes the admissibility of the results of the test.

Subsection (c) of section 11—501 referred to provides that evidence obtained by a blood test is admissible "upon the trial of any action or proceeding arising out of the acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor * * *". It is further provided that such evidence shall give rise to certain specified presumptions, provided, however, that "evidence based upon a chemical analysis of blood * * * shall not be admitted unless such substance was procured and such analysis was made *with the consent* of the person as provided by this chapter, whose bodily substance was so analyzed." (Emphasis added.) Subsection (c) also provides "the foregoing provisions of this paragraph (c) shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor."

Subsection (e) of sec. 11—501 referred to provides for the administration of a blood test to an unconscious person or to a person incapable of refusal and provides that, when such person "is given a blood test at the request of the law enforcement officer under the provisions of this chapter, only a physician authorized to practice medicine in all of its branches, a registered nurse or other qualified person may withdraw blood, in a manner prescribed by the Department of Public Health for the purpose of determining the alcoholic content therein."

■■ On the basis of the foregoing provisions referred to, the State argues that the prohibition against the admission of a possible blood test as evidence is meaningless, because, in spite of the statutory language "as provided by this chapter" (the chapter in which the statutory section is located) nowhere does the statute provide the manner in which consent is to be obtained. The State also contends that even assuming that the consent requirement is not regarded as meaningless, the statute contemplates two classes of persons, (1) those who are capable of consenting, and (2) those who are incapable of consenting; that even if the statute requires the consent of the former, it does not require it of the latter. The State's argument in part is that to require consent from persons who are incapable of rendering it would be a ridiculous requirement. The State further argues that the statute does not cause blood tests to be taken in violation of its provisions to be admissible for all purposes but only for the purpose of establishing the presumption specified in subsection (c). It is contended that even if the results of the tests are not admissible to create the presumptions, they nevertheless should be admissible to serve as a basis for expert testimony.

Although some cases and language, including certain portions of the statute itself may lend support to the State's argument, we do not agree with the State's contentions. With respect to the general statutory requirement of consent, the court in *Weaver v. Lovell,* 128 Ill.App.2d 338, 262 N.E.2d 113, did seem to regard the requirement as meaningless. The *Weaver* case involved a dramshop action in which the person whose blood was analyzed was not a party. The court refused to give effect to the consent requirement, because no provision was made in the statute for the manner in which such consent was to be tendered. We conclude, however, that although the Illinois legislature inadvertently may have failed to include the language to which section 11—501(c) presumably referred, the legislature nevertheless intended its provision with respect to consent, in section 11—501(c), to itself impose a consent requirement.

The language of section 11—501(c) was quite sufficient to impose a general requirement that consent be obtained. The concept of consent has long been familiar to the criminal law. To the extent that section

11—501(c) failed to provide how such consent was to be obtained, we believe that the pre-existing body of law with respect to consent supplied enough information for guidance on that issue. Accordingly, as in *People v. Williams,* 116 Ill.App.2d 332, 252 N.E.2d 555, where there was consent and in which we thoroughly reviewed this issue, we gave effect to as much of section 11—501(c) as possible in treating the words "as provided by this chapter" as surplusage.

Although section 11—501 might not be the most artfully drafted section, we will not presume that it implies that the arbitrary distinction that persons capable of rendering consent when a chemical test is to be taken, have the right, by withholding consent, to prevent the results from being used as evidence, while persons incapable at such time of rendering consent have no right to prevent a test from being used even after they have regained the ability to consent or withhold consent. Such distinction, we recognize, would raise grave substantive questions, since, not only would the distinction not be related reasonably to the attainment of what might be the permissible objective of insuring at least an opportunity of taking a blood test from all persons whether or not they are capable of rendering consent when the test is to be taken, but it would discriminate arbitrarily between the two classes of persons. Section 11—501, subsection (e) merely affords the opportunity for performing a test on a person who is incapable of rendering consent but does not suggest that the results of such test will, even in the absence of consent (required under subsection 11—501(c)), be available as evidence. Although subsection (e) permits the performance of a test on a person incapable of rendering consent, subsection (c), nevertheless precludes unconditionally the use of evidence as the result of such test unless the person whose blood was analyzed gives the requisite consent. Nowhere in subsection (e) is there any provision authorizing the use of the test as evidence where consent is not given. We conclude that under subsection (e) the use of the test as evidence where consent is not given is precluded.

Subsection (c) clearly states that in absence of the requisite consent, evidence based upon a blood test shall not be admitted. An expert's opinion would be based upon the chemical test. Similarly, the very results of the test, of course, would be barred. It is true that subsection (c) does provide that the consent required with respect to the chemical analysis shall not control the admissibility of other competent evidence with respect to whether or not defendant was intoxicated. By other evidence obviously is meant evidence other than the amount of alcohol in a person's blood as shown by chemical analysis as provided in this section.

In a similar case recently decided in the Second District Appellate

Court (*People v. Todd* (1972), 7 Ill.App.3d 617, 288 N.E.2d 512), where the court was concerned with the question of whether a driver can be required to submit to extraction of his blood for chemical analysis, the court there concluded that this could only be done when he is placed under arrest. The court, also, did in fact conclude that evidence of the chemical analysis of blood extracted from a defendant, to which the defendant did not consent, was not admissible in evidence even though the defendant may have been under arrest. The determination of the court was that, since defendant did not consent to the taking of the blood, evidence resulting therefrom could not be admitted under the statute. As indicated in our opinion, we have made the same determination.

For the reasons stated, therefore, we affirm the judgment of the circuit court of Whiteside County.

Affirmed.

SCOTT and DIXON, JJ., concur.