(Nos. 45547, 45601, 45697 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOSEPH TODD, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. WILLIE CHAMBERS, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GAINES SELF, Appellee.

*Opinion filed January 21, 1975.*

No. 45547.—Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Du Page County; the Hon. L. L. Rechenmacher, Judge, presiding.

William J. Scott, Attorney General, of Springfield, and William V. Hopf, State's Attorney, of Wheaton (James B. Zagel and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and James W. Jerz and Edward N. Morris, of the Model District State's Attorney's Office, of Elgin, of counsel), for the People.

Harold J. Spelman, of West Chicago, for appellee.

No. 45601.—Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County; the Hon. L. Eric Carey, Judge, presiding.

William J. Scott, Attorney General, of Springfield, and Jack Hoogasian, State's Attorney, of Waukegan (James B. Zagel and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and James W. Jerz, Edward N. Morris, and Charles D. Sheehy, Jr., of the Model District State's Attorney's Office, of Elgin, of counsel), for the People.

Paul Bradley, First Deputy Defender, and Kenneth L. Jones, Assistant Defender, Office of State Appellate Defender, of Chicago (Akim Gursel (law student), of counsel), for appellee.

No. 45697.—Appeal from the Appellate Court for the Third District; heard in that court on appeal from the

Circuit Court of Whiteside County; the Hon. George O. Hebel, Judge, presiding.

William J. Scott, Attorney General, of Springfield, and L. E. Ellison, State's Attorney, of Sterling (James B. Zagel and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, of counsel), for the People.

Donald E. Blodgett and James L. Reese, both of Rock Falls, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

The three cases consolidated in this appeal involve the question whether the provisions of the statute relating to driving while under the influence of intoxicating liquor or a narcotic drug (Ill. Rev. Stat. 1969, ch. 95½, par. 144; Ill. Rev. Stat. 1971, ch. 95½, par. 11–501) prohibit the evidentiary use of a blood sample when obtained without the defendant's consent.

The incident involving the defendant, Willie Chambers, occurred on December 23, 1969. Chambers was involved in an auto accident resulting in the death of a passenger in another car. One of the investigating officers observed Chambers to be faint and heard him complain of shoulder and chest pains. Chambers was not boisterous or belligerent, but apparently was incoherent. He was placed in the back of the police car to be taken to the police station. When the police car started, Chambers slid over and seemed to have fainted. The police officer then reached and leaned into the back seat and noted the odor of alcohol on Chambers's breath. Chambers then was taken to a hospital emergency room. The doctor diagnosed Chambers as having received a brain concussion. He did not recall smelling any alcohol on Chambers's breath, but he did draw a blood specimen at the request of the police. The blood test results indicated a .21 percent weight of alcohol in Chambers's blood. This result was admitted into

evidence and, apparently, the statutory presumption that a 0.10 percent or more weight of alcohol in the blood indicates "that the person was under the influence of intoxicating liquor" was applied. (Section 47(c)(3) of the Uniform Act Regulating Traffic on Highways, Ill. Rev. Stat. 1969, ch. 95½, par. 144(c)(3).) Two witnesses, including a passenger in Chambers's car, testified that they did not smell alcohol on Chambers's breath. Chambers testified that he drank no liquor on the day in question. He stated that his car skidded prior to the accident, that he assisted the passenger in his car after the accident, and that he entered the squad car. He remembered nothing else until awaking in the hospital. He was unconscious at the time the blood was taken from him at the hospital.

A jury found Chambers guilty of reckless homicide and of driving while under the influence of alcohol. On appeal the appellate court reversed and remanded, holding that under section 47(c)(3) of the Uniform Act Regulating Traffic on Highways the chemical analysis of a driver's blood could not be admitted into evidence unless he had consented to the test and that the protection was applicable to an unconscious person. 8 Ill. App. 3d 430.

The incident involving Self occurred on December 26, 1971, resulting in the death of a person following an auto collision. It was stipulated that a blood sample was taken from Self without his consent at a time he was incapable of refusing the action. It further was stipulated that the blood was taken at a hospital by a qualified technician under the direction of a licensed physician, and that the State trooper who requested the taking of the blood sample had probable cause to believe Self may have been intoxicated. Self was indicted for involuntary manslaughter, reckless homicide and driving under the influence of intoxicating liquor. The trial court held that the blood analysis could not be used in evidence because section 11–501(c)(3) of the Illinois Vehicle Code (Ill. Rev. Stat. 1971, ch. 95½, par. 11–501(c)(3)) prohibited the use of

such evidence unless defendant first consented to the test. The appellate court affirmed. 8 Ill. App. 3d 1003.

The incident involving Todd occurred on December 15, 1969. Todd was the driver of a truck involved in an auto accident resulting in the death of the occupants of the other car. The investigating officer detected a strong odor of alcohol in the cab of Todd's truck. Todd was treated at the hospital for lacerations. The investigating officer was with him at the time. Todd told the officer that he was turning at a particular intersection. The officer knew that the impact was 76 feet short of this intersection. This information, coupled with his own observations, caused him to seek a blood test of Todd, who did not consent. Todd subsequently was indicted for reckless homicide. The trial court granted the motion to suppress the evidence of the blood analysis. The appellate court affirmed (7 Ill. App. 3d 617), on the ground that section 47(c)(3) of the Uniform Act Regulating Traffic on Highways required a driver's consent to a blood analysis for it to be used in evidence. We allowed leave to appeal in all three cases.

The bizarre history of the legislation, relating to driving while intoxicated and evidence of the amount of alcohol in the driver's blood, is a necessary preamble to our conclusion.

In 1957 the legislature provided for certain legal presumptions of intoxication resulting from chemical blood tests. Section 47 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1957, ch. 95½, par. 144), entitled, "Persons under the influence of intoxicating liquor or narcotic drugs," provided in pertinent part:

> "(b) Upon the trial of any action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his breath, blood, urine, saliva or other bodily

substance is admissible, and the result of any such analysis shall give rise to the following presumptions:

1. If there was 0.05 percent or less by weight of alcohol in the person's blood, it shall be presumed that such person was not under the influence of intoxicating liquor.

2. If there was in excess of 0.05 percent but less than 0.15 percent of weight of alcohol in the person's blood, such fact shall not give rise to any presumption that the person was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining whether such person was under the influence of intoxicating liquor;

3. If there was 0.15 percent or more by weight of alcohol in the person's blood, it shall be presumed that such person was under the influence of intoxicating liquor.

4. The foregoing provisions of this paragraph (b) shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not defendant was under the influence of intoxicating liquor."

No mention of "consent" was made in the foregoing statute.

In 1967 the statute was amended (Ill. Rev. Stat. 1967, ch. 95½, par. 144) and, as amended, section 47 provided in part, in 1969, as follows:

"(a) No person who is under the influence of intoxicating liquor may drive or be in actual physical control of any vehicle within this State.

(b) No person who is an habitual user of or under the influence of any narcotic drug or who is under the influence of any other drug to a degree which renders him incapable of safely driving a vehicle may drive or be in actual physical control of any vehicle within this State. The fact that a person charged with a violation of this subsection (b) is or has been entitled to use such drug under the laws of this State does not constitute a defense against any charge of violation of this subsection (b).

(c) Upon the trial of any action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a

vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his breath, blood, urine, saliva or other bodily substance is admissible, as provided hereinafter in this paragraph (c) and the result of any such analysis shall give rise to the following presumptions:

1. If there was at the time of such analysis 0.05 percent or less by weight of alcohol in the person's blood, it shall be presumed that the person was not under the influence of intoxicating liquor;

2. If there was at the time of such analysis in excess of 0.05 percent but less than 0.10 percent by weight of alcohol in the person's blood, such fact shall not give rise to any presumption that the person was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining whether such person was under the influence of intoxicating liquor;

3. If there was at the time of such analysis 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor.

Per cent by weight of alcohol in the blood shall be based upon milligrams of alcohol per 100 cubic centimeters of blood. Evidence based upon a chemical analysis of blood, urine, breath or other bodily substance shall not be admitted unless such substance was procured and such analysis made with the consent of the person as provided for in Section 47.1 of this Act, whose bodily substance was so analyzed.

The foregoing provisions of this paragraph (c) shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of intoxicating liquor.

* * *

(e) When an unconscious person or person otherwise incapable of refusal is given a blood test at the request of a law enforcement officer under Section 47.1 of this Act, only a physician authorized to practice medicine in all its branches, a registered nurse or other qualified person may withdraw blood, in a manner

prescribed by the Department of Public Health for the purpose of determining the alcoholic content therein."

The element of "consent" was added for the first time in 1967 with specific reference to the consent "as provided for in Section 47.1 of this Act." Provision also was added for the taking of blood from "an unconscious person or person otherwise incapable of refusal *** under Section 47.1 of this Act." In fact there was then no section 47.1 of the Act. This was to have been an implied-consent law but was not passed by the House of Representatives.

In 1971 the Act was further amended, and renumbered (Ill. Rev. Stat. 1971, ch. 95½, par. 11—501). Insofar as this case is concerned the only relevant changes were that the references to the nonexistent "Section 47.1" were deleted. In their places, however, were added the words "this Chapter." Thus the statute provided that a chemical analysis of blood or other bodily substance could not be admitted unless obtained with the consent of the person "as provided by this Chapter." Further, it provided that a blood test of an unconscious person could only be given "under the provisions of this Chapter." Again, however, there was no provision in the chapter either for the manner of giving consent by a person or for the manner of taking the blood test of an unconscious person.

The State contends that the "consent" requirement of the statute ought to be ignored because of its dependence on nonexistent other sections of the Act. Alternately, the State argues that the consent requirements of the statute should be narrowly construed as applying only when it seeks to invoke the presumption of intoxication. Lastly, the State contends that the provisions of subsection (e) of the statute suggest that the legislature intended to exempt unconscious persons from the consent requirement.

However, we do not concur with the interpretations advanced by the State. One appellate court has adopted the first two arguments advanced by the State. In *Weaver v. Lovell* (4th Dist. 1970), 128 Ill. App. 2d 338, the court,

in a dramshop case, had before it the consideration of the 1969 statute. The court concluded that the statute was directed only to those cases where certain presumptions of intoxication were intended to be used. It also concluded that the prohibition against the use of the results of the tests in evidence was meaningless because it required the consent under a nonexistent section (section 47.1) of the Act. The court held that the testimony as to the results of the blood-sample test was not rendered inadmissible because it was used as the basis for expert testimony and not to give rise to a presumption.

In addition to the cases at bar, the court in *People v. Wheatley* (4th Dist. 1972), 5 Ill. App. 3d 827, took a contrary position to that recited in *Weaver*. In *People v. Wheatley*, the court, relying on *People v. Williams* (3rd Dist. 1969), 116 Ill. App. 2d 332, treated the reference to section 47.1 as mere surplusage.

We believe that the reference to the nonexistent sections of the statute, apparently intended to prescribe the manner of making consent, including implied consent, does not render the statute meaningless or inoperative. The legislature deemed it necessary to add a consent requirement to the statute as it existed prior to 1967. The obligation to obtain consent appears to be the dominant intent of the legislature, and if we reach a conclusion reading out of the statute, as amended, the requirement of consent, we do no more than to legislate ourselves. The legislative history compels this conclusion. In 1971 the reference to section 47.1 was deleted, but the consent requirement was retained. Obviously the substitution in 1971 of the reference to "this Chapter" anticipated probable reference therein to the manner of making consent, including an implied consent. Again, implied consent was not forthcoming, but the consent requirement was retained.

Our legislature steadfastly has maintained a great concern over the right of the State to take blood-sample

tests in the case of motorists. Our present statute continues to express the concern. Consent is still required "as provided by this Chapter." (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(c)(3).) A blood test may be administered to an unconscious person only "under the provisions of this Chapter." (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(e).) We now have an implied consent to take a chemical breath analysis of the driver, but it is applicable only "when made as an incident to and following his lawful arrest." (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501.1(a).) There is no provision within the chapter for taking a blood sample of an unconscious person. In fact, it is specifically provided that an unconscious person is deemed to have withdrawn his implied consent. Ill. Rev. Stat. 1973, ch. 95½, par. 11—501.1(e).

In the face of this history, it would do violence to the legislative intent to read out of the statutes in question the consent requirement. (*Carey v. Elrod* (1971), 49 Ill.2d 464, 472; *People v. Hudson* (1970), 46 Ill.2d 177, 181; *Scofield v. Board of Education* (1952), 411 Ill. 11, 16.) If the main intent of the statute can be determined, words may be· declared mere surplusage to give effect to the legislative intent. (*Klein v. Department of Registration and Education* (1952), 412 Ill. 75, 86.) We believe it appropriate to treat the words "Section 47.1" of the 1969 statute and "this Chapter" of the 1971 statute as mere surplusage. The statutes thus may be given effect rather than to cause the burdens which they impose to be defeated. (*Scofield v. Board of Education* (1952), 411 Ill. 11, 15.) The consent thus required is that recognized outside of any specific statutory references in "this Chapter."

The argument advanced that the consent should not be required of an unconscious person is even less compelling. The subsequent statutory history indicates that the legislature intended just the opposite, in that even the implied consent, otherwise now applicable, does not apply

to an unconscious person.

Finally, we cannot interpret the statute as meaning that the consent must be obtained only if the presumption is to be applied and otherwise the consent is unnecessary. The statute most clearly states that "evidence based upon" a chemical analysis "shall not be admitted" unless consent to the test was given. The statute does not limit its proscriptions only to those cases where the presumption is intended to be used.

The provisions reciting that nothing in the paragraph may limit the right to introduce other competent evidence on the question of intoxication mean that relevant evidence outside of the test results, or evidence based thereon, may still be admitted into evidence.

Our analysis of the statutes leads us to the inevitable conclusion that consent must be obtained if evidence based on a blood or similar test is to be used in any trial arising out of acts supposedly committed by a person driving a vehicle while intoxicated.

This is an unfortunate result and a cruel anomaly. Since *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, it is clear that a compulsory blood test does not violate any constitutional rights of an individual merely because he objected to such tests. Further, the absence of a formal arrest may not taint a limited search, given probable cause and evidence that may dissipate. (See *Cupp v. Murphy* (1973), 412 U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000.) A number of cases, dealing specifically with the question of blood tests and the removal of blood from a person without consent, have upheld the constitutional right to do so even where the person was unconscious and, in some cases, without a formal arrest so long as probable cause is present. See *DeVaney v. State* (1972), —— Ind. ——, 288 N.E.2d 732; *People v. Fidler* (1971), 175 Colo. 90, 485 P.2d 725; *State v. Deshner* (1971), 158 Mont. 188, 489 P.2d 1290; *State v. Mitchell* (Fla. 1971), 245 So. 2d 618; *State v.*

*Findlay* (1966), 259 Iowa 733, 145 N.W.2d 650.

Thus, absent a more limiting statutory provision, the taking of a blood sample does not require the consent of the donor. The anomaly is that in drunken-driving cases in certain other jurisdictions, the State may obtain a blood sample if the results thereof are relevant to the case. Yet there is no case which is more compelling than that involving the drunk driver. As Mr. Justice Clark stated in *Breithaupt v. Abram* (1957), 352 U.S. 437, 439-440, 1 L. Ed. 2d 448, 452-453, 77 S. Ct. 408, 412.

> "Modern community living requires modern scientific methods of crime detection lest the public go unprotected. The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield. The States, through safety measures, modern scientific methods, and strict enforcement of traffic laws, are using all reasonable means to make automobile driving less dangerous.
>
> As against the right of an individual that his person be held inviolable, even against so slight an intrusion as is involved in applying a blood test of the kind to which millions of Americans submit as a matter of course nearly every day, must be set the interests of society in the scientific determination of intoxication, one of the great causes of the mortal hazards of the road. And the more so since the test likewise may establish innocence, thus affording protection against the treachery of judgment based on one or more of the senses. Furthermore, since our criminal law is to no small extent justified by the assumption of deterrence, the individual's right to immunity from such invasion of the body as is involved in a properly safeguarded blood test is far outweighed by the value of its deterrent effect due to public

realization that the issue of driving while under the influence of alcohol can often by this method be taken out of the confusion of conflicting contentions." (Footnotes omitted.)

We conclude that the appellate courts in these consolidated cases correctly interpreted the statutes before them as requiring the consent of the defendants to the taking of the blood specimens. The defendant Chambers raised additional matters which we do not deem necessary to further discuss in view of the conclusion reached regarding the statutory interpretation.

Accordingly the various judgments of the appellate courts are affirmed.

*Judgments affirmed.*