2016 IL App (5th) 150048

NO. 5-15-0048

NOTICE
Decision filed 02/18/16. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 11-CF-724 |
| | ) | |
| STEPHEN HARRISON, | ) | Honorable |
| | ) | Jan V. Fiss, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE SCHWARM delivered the judgment of the court, with opinion.
Justices Welch and Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    After refusing to submit to a breath test following his arrest for driving under the influence of alcohol (DUI), the defendant, Stephen Harrison, was taken to a hospital where samples of his blood were drawn without a warrant or his consent. Testing of the samples revealed that more than two hours after the defendant had been driving, his blood-alcohol concentration (BAC) was over twice the legal limit of 0.08. The defendant later moved to suppress the test results, arguing that the blood samples had been illegally obtained. Following the trial court's denial of the defendant's motion, the cause

1

proceeded to a jury trial where the defendant was convicted on two counts of aggravated DUI.

¶ 2    On appeal, the defendant contends that the trial court erred in denying his motion to suppress.  In support of this contention, the defendant relies on *Missouri v. McNeely*, 569 U.S. ___, 133 S. Ct. 1552 (2013), and *People v. Armer*, 2014 IL App (5th) 130342, both of which stand for the propositions that the natural dissipation of alcohol in the bloodstream is not a *per se* exigent circumstance justifying a warrantless, nonconsensual draw of a DUI suspect's blood and that the reasonableness of such a draw must be decided on a case-by-case basis by considering the totality of the circumstances.  Citing *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419 (2011), and *People v. Jones*, 214 Ill. 2d 187 (2005), the State counters that because prior to *McNeely* and *Armer*, a warrantless, nonconsensual draw of a DUI suspect's blood was authorized by binding precedent interpreting section 11-501.2(c)(2) of the Illinois Vehicle Code (section 11-501.2(c)(2)) (625 ILCS 5/11-501.2(c)(2) (West 2010)), the trial court properly denied the defendant's motion on the basis that the good-faith exception to the exclusionary rule was applicable under the circumstances.  For the reasons that follow, we agree with the State and affirm the trial court's judgment.

¶ 3                              BACKGROUND

¶ 4    On March 3, 2011, at approximately 9:30 p.m., the defendant was driving his pickup truck home from a bar when he "T-boned" an oncoming motorcycle while making a left turn across Lebanon Avenue at Center Plaza Drive in Belleville.  The motorcycle's rider, Jason Wilson, sustained a massive injury to his left leg as a result and was

2

transported by ambulance to St. Elizabeth's Hospital in Belleville. A witness to the accident described Wilson's leg as "pretty much amputated" at the scene, and Wilson later recalled that he had panicked when he "thought [he] saw bone sticking out of it and blood squirting out." Wilson was ultimately airlifted to St. Louis University Hospital, where his left leg was surgically amputated at the knee.

¶ 5     Officer Anthony Branchini of the Belleville police department responded to the scene of the accident shortly after it occurred. Branchini spoke with the defendant and two independent eyewitnesses but was unable to talk to Wilson "because of the condition that he was in." While speaking with the defendant, Branchini noticed that the defendant had red, glossy eyes and an odor of alcohol emanating from his person. Acknowledging that he had struck Wilson with his truck, the defendant told Branchini that he had just left a bar in Shiloh where he had consumed "two beers." Branchini subsequently administered various field sobriety tests, all of which the defendant failed. Believing that the defendant had been operating his vehicle under the influence of alcohol, Branchini placed him under arrest for DUI.

¶ 6     After the defendant refused to submit to a breath test at the Belleville police department, Branchini transported him to St. Elizabeth's Hospital so that samples of his blood could be drawn for toxicological testing. At trial, Branchini indicated that he had obtained the blood samples "[d]ue to the severity of [Wilson's] injuries" and that there were "special laws" that allowed him to do so.

¶ 7     At 11:45 p.m., a nurse at St. Elizabeth's drew two samples of the defendant's blood at Branchini's request. Although the defendant did not agree to the procedure, he was

3

apparently cooperative while the samples were collected. A forensic toxicologist later analyzed the samples, and the analysis revealed that the concentration of ethanol in the blood was 0.161 grams per deciliter.

¶ 8     On October 29, 2014, the defendant filed a motion to suppress the test results derived from the blood draw. Citing *Armer*, the defendant maintained that the blood draw was a nonconsensual, warrantless search and seizure and that "there were no exigent circumstances which would excuse the need for a warrant."

¶ 9     At the hearing on the defendant's motion to suppress, the State argued that *Armer* was distinguishable from the present case because it had not involved an accident resulting in death or personal injury to another. Citing *Jones*, the State further argued that Branchini had acted in good-faith reliance on established precedent holding that warrantless, nonconsensual blood draws were permissible pursuant to section 11-501.2(c)(2). The State maintained that under *Davis*, the exclusionary rule was therefore inapplicable.

¶ 10   On November 5, 2014, the trial court entered a written order denying the defendant's motion to suppress. Citing *Davis* and *Jones*, the trial court held that Branchini had properly complied with section 11-501.2(c)(2) and that "[e]ven if [section 11-501.2(c)(2)] is deemed unconstitutional," Branchini had acted in good-faith reliance on prior precedent upholding its validity.

¶ 11   On November 18, 2014, a jury found the defendant guilty on two counts of aggravated DUI (625 ILCS 5/11-501(a)(1), (d)(1)(C) (West 2010)). Specifically, the jury determined that on March 3, 2011, the defendant had driven a motor vehicle while his

4

BAC was 0.08 or more, that the defendant had been involved in a vehicular accident resulting in great bodily harm and permanent disability to another person, and that the defendant's driving with a BAC of 0.08 or more had been the proximate cause of the great bodily harm and permanent disability to the other person. See Illinois Pattern Jury Instructions, Criminal, No. 23.48 (4th ed. 2000).

¶ 12   On January 12, 2015, after denying the defendant's motion for a new trial, the trial court merged the defendant's convictions and sentenced him to serve two years in the Illinois Department of Corrections. On January 29, 2015, the defendant filed his timely notice of appeal.

¶ 13                                    DISCUSSION

¶ 14   At the outset, we note that the defendant does not argue that Branchini acted without probable cause to arrest him for DUI or that the means employed to obtain his blood were unreasonable. Additionally, the State concedes that the defendant's blood was drawn without his express or implied consent and that given the instructions that the jury received, he would not have been convicted in the absence of the evidence that he had driven while his BAC was 0.08 or more. The only issue we must decide is whether the trial court properly determined that Branchini had acted in good-faith reliance on binding precedent when he obtained the samples of the defendant's blood. This is a purely legal question that we review *de novo*. *People v. Turnage*, 162 Ill. 2d 299, 305 (1994).

¶ 15   "The fourth amendment of the United States Constitution, applicable to the states through the due process clause of the fourteenth amendment, guarantees to all citizens the

5

right to be free from unreasonable searches and seizures." *In re Lakisha M.*, 227 Ill. 2d 259, 264 (2008). The fourth amendment thus protects an individual's personal privacy and dignity from unwarranted intrusions by the State. *Winston v. Lee*, 470 U.S. 753, 760 (1985). To that end, evidence obtained in violation of fourth amendment principles is susceptible to suppression under the judicially created "exclusionary rule." *Davis*, 564 U.S. at ___, 131 S. Ct. at 2426. Because the "sole purpose" of the exclusionary rule is to deter future violations of the fourth amendment, however, its applicability requires some degree of police culpability, and "the deterrence benefits of suppression must outweigh its heavy costs." *Id.* at ___, 131 S. Ct. at 2426-29. As a result, there is a well-recognized "good-faith exception" to the rule. *Id.*

¶ 16    In *Davis*, the United States Supreme Court applied these principles when holding that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Id.* at ___, 131 S. Ct. at 2429. In *People v. LeFlore*, 2015 IL 116799, our supreme court adopted the reasoning in *Davis* and held the same.

¶ 17    "Reasonableness under the fourth amendment generally requires a warrant supported by probable cause." *People v. Flowers*, 179 Ill. 2d 257, 262 (1997); see also *Kentucky v. King*, 563 U.S. 452, 459 (2011). Nevertheless, "the warrant requirement is subject to certain reasonable exceptions." *King*, 563 U.S. at 459. One such exception is the "exigent-circumstances exception" (*Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984)), which "applies when the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable" (internal quotation

marks omitted) (*King*, 563 U.S. at 460). Such exigencies include the need to render emergency assistance, the "hot pursuit of a fleeing suspect," and the need to prevent the imminent destruction of evidence. *King*, 563 U.S. at 460.

¶ 18 In *Schmerber v. California*, 384 U.S. 757, 758-59, 769 (1966), after a DUI suspect was arrested while receiving treatment at a hospital for injuries sustained in an accident involving an automobile that he had apparently been driving two hours earlier, a sample of his blood was drawn at the direction of a law enforcement officer without his consent or a warrant. When later concluding that the suspect had not been subjected to an unreasonable search and seizure, the United States Supreme Court held that although the blood draw implicated the fourth amendment's warrant requirement, under the "special facts" of the case, the officer's attempt to secure evidence of the suspect's BAC "was an appropriate incident to [the suspect's] arrest." *Id.* at 770-71. The Court explained:

> "The officer in the present case *** might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence [citation]. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." (Internal quotation marks omitted.) *Id.*

The Court thus determined that the imminent destruction of evidence was an exigent circumstance that justified the warrantless blood draw under the circumstances. *Id.* at

7

772; see also *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1560. The Court further noted that "there was plainly probable cause" to arrest the suspect for DUI and that his blood had been taken in a reasonable manner, *i.e.*, "by a physician in a hospital environment according to accepted medical practices." *Schmerber*, 384 U.S. at 768, 771.

¶ 19   As the Supreme Court of Wisconsin later observed:

"*Schmerber* can be read in either of two ways: (a) that the rapid dissipation of alcohol in the bloodstream alone constitutes a sufficient exigency for a warrantless blood draw to obtain evidence of intoxication following a lawful arrest for a drunk driving related violation or crime−as opposed to taking a blood sample for other reasons, such as to determine blood type; or (b) that the rapid dissipation of alcohol in the bloodstream, coupled with an accident, hospitalization, and the lapse of two hours until arrest, constitute exigent circumstances for such a blood draw." *State v. Bohling*, 494 N.W.2d 399, 402 (Wis. 1993), *abrogated by McNeely*, 569 U.S. ___, 133 S. Ct. 1552.

See also *State v. Johnson*, 744 N.W.2d 340, 343-44 (Iowa 2008); *State v. Shriner*, 751 N.W.2d 538, 548 (Minn. 2008), *abrogated by McNeely*, 569 U.S. ___, 133 S. Ct. 1552. As a result, "[i]n the wake of *Schmerber*, jurisdictions split 'on the question whether the natural dissipation of alcohol in the bloodstream establishes a *per se* exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations.' " *State v. Foster*, 2014 WI 131, ¶ 37, 360 Wis. 2d 12, 856 N.W.2d 847 (quoting *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1558). The supreme courts of Wisconsin and Minnesota, for instance, explicitly held that the

rapid dissipation of alcohol was a *per se* exigency (see *State v. Netland*, 762 N.W.2d 202, 212-14 (Minn. 2009); *Shriner*, 751 N.W.2d at 542-45; *State v. Faust*, 2004 WI 99, ¶ 16, 274 Wis. 2d 183, 682 N.W.2d 371; *Bohling*, 494 N.W.2d at 402), while the supreme courts in other states, such as Missouri and Iowa, disagreed and declined to interpret *Schmerber* so broadly (see *State v. Harris*, 763 N.W.2d 269, 272-73 (Iowa 2009) (*per curiam*); *Johnson*, 744 N.W.2d at 343-44; *State v. McNeely*, 358 S.W.3d 65, 73-74 (Mo. 2012) (*en banc*) (*per curiam*)).

¶ 20    In *McNeely*, the United States Supreme Court resolved the "split of authority on the question whether the natural dissipation of alcohol in the bloodstream establishes a *per se* exigency" when it revisited *Schmerber* and held that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *McNeely*, 569 U.S. at ___, ___, 133 S. Ct. at 1558, 1568.  Noting, among other things, that the "*per se* rule" ignored that technological advances since 1966 now "allow for the more expeditious processing of warrant applications, particularly in contexts like drunk-driving investigations where the evidence offered to establish probable cause is simple," the Court explained that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances" and that the metabolization of alcohol in the bloodstream is but one factor to consider. *Id.* at ___, ___, 133 S. Ct. at 1561-63, 1568.

¶ 21    The Supreme Court issued its decision in *McNeely* on April 17, 2013.  *Id.* at ___, 133 S. Ct. at 1552.  In *Armer*, we recognized that *McNeely* is now the law of the land.

9

See *Armer*, 2014 IL App (5th) 130342, ¶¶ 13-14. Our research indicates that years before the jurisdictional split that *McNeely* resolved was recognized in terms of explicitly accepting or rejecting the notion that *Schmerber* had established a "*per se* rule," the supreme courts of several states, including Illinois, had effectively adopted such a rule by considering *Schmerber* in conjunction with *Cupp v. Murphy*, 412 U.S. 291, 296 (1973), a case that specifically referenced *Schmerber* when discussing the need to preserve "highly evanescent evidence." See *State v. Cocio*, 709 P.2d 1336, 1345 (Ariz. 1985) (*en banc*); *People v. Sutherland*, 683 P.2d 1192, 1195 (Colo. 1984) (*en banc*); *Strong v. State*, 202 S.E.2d 428, 432 (Ga. 1973) (*per curiam*); *People v. Todd*, 59 Ill. 2d 534, 544 (1975); *State v. Oevering*, 268 N.W.2d 68, 72-74 (Minn. 1978); *State v. Campbell*, 615 P.2d 190, 195-97 (Mont. 1980); *State v. Hollingsworth*, 334 S.E.2d 463, 469 (N.C. Ct. App. 1985); *State v. Milligan*, 748 P.2d 130, 136 (Or. 1988) (*en banc*); see also *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1575-76 (Thomas, J., dissenting) (defending the *per se* rule by analogizing *Schmerber* and *Cupp*).

¶ 22    In *Todd*, in consolidated cases, our supreme court affirmed the suppression of BAC test results derived from warrantless, nonconsensual blood draws taken from hospitalized DUI suspects at the direction of law enforcement. *Todd*, 59 Ill. 2d at 536-46. The court affirmed on the basis that under the then-governing statute, the results were inadmissible because the suspects had not consented to the taking of their blood. *Id*. Noting the inherent dangers posed by drunk drivers, the court described its holding as "an unfortunate result and a cruel anomaly," explaining:

"Since *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, it is clear that a compulsory blood test does not violate any constitutional rights of an individual merely because he objected to such tests. Further, the absence of a formal arrest may not taint a limited search, given probable cause and evidence that may dissipate. (See *Cupp v. Murphy* (1973), 412 U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000.)" *Id.* at 544-45.

¶ 23 In 1982, the legislature eliminated the statutory consent requirement that precluded the supreme court from reversing the lower courts' judgments in *Todd* and "then eliminated altogether the right to refuse chemical testing in 1986." *Jones*, 214 Ill. 2d at 196-98. Thereafter, implicitly applying the *per se* rule rejected in *McNeely*, the appellate court consistently upheld the constitutional validity of warrantless, nonconsensual blood draws such as the one administered in the present case. See *People v. Jones*, 344 Ill. App. 3d 684, 685-89 (2003), *rev'd on other grounds*, 214 Ill. 2d 187 (2005); *People v. Ruppel*, 303 Ill. App. 3d 885, 889-92 (1999); *People v. Giere*, 192 Ill. App. 3d 520, 522-24 (1989); see also *Seiser v. City of Chicago*, 762 F.3d 647, 657 (7th Cir. 2014); *People v. Carey*, 386 Ill. App. 3d 254, 260 (2008) (and cases cited therein). Moreover, in *Jones*, when stating that in *Todd*, it had "endorsed the United States Supreme Court's holding in *Schmerber*," our supreme court characterized *Schmerber*'s holding as, "[T]he taking of a blood sample without the defendant's consent or a search warrant was a 'reasonable' search under the fourth amendment where there was probable cause to believe the defendant was intoxicated, and the delay caused by obtaining a search warrant might have resulted in loss of evidence of the defendant's intoxication,

11

given the natural dissipation of the alcohol in the defendant's blood." *Jones*, 214 Ill. 2d at 195-96. Thus, although our supreme court has never specifically stated that the natural dissipation of alcohol in the bloodstream is a *per se* exigency justifying the warrantless, nonconsensual taking of a DUI suspect's blood, it tacitly held as much in *Todd* and *Jones*. More important for the purposes of the present appeal, however, is the *Jones* court's treatment of section 11-501.2(c)(2), which went into effect in 1995 (see Pub. Act 88-632 (eff. Jan. 1, 1995)) and provides:

> "Notwithstanding any ability to refuse under this Code to submit to these tests or any ability to revoke the implied consent to these tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by or in actual physical control of a person under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof has caused the death or personal injury to another, that person shall submit, upon the request of a law enforcement officer, to a chemical test or tests of his or her blood, breath or urine for the purpose of determining the alcohol content thereof or the presence of any other drug or combination of both." 625 ILCS 5/11-501.2(c)(2) (West 2010).

¶ 24     In *Jones*, the defendant was arrested for DUI after his involvement in an automobile accident that had not resulted in a death or personal injury to another person. *Jones*, 214 Ill. 2d at 189-90. After the accident, the defendant was transported to a hospital where "hospital personnel administered blood and urine tests at the request of the arresting officer, but without [the] defendant's consent." *Id.* The appellate court subsequently affirmed the trial court's suppression of the test results, reasoning that

"because section 11-501.2(c)(2) explicitly authorizes nonconsensual chemical tests in situations involving the death or personal injury of another, it does not authorize them in situations not involving the death or personal injury of another." *Id*. at 192. The supreme court subsequently reversed the appellate court's judgment, holding that because prior to the enactment of section 11-501.2(c)(2) "nonconsensual chemical testing of a DUI arrestee was permissible in all DUI situations," interpreting section 11-501.2(c)(2) as "creating a right to refuse chemical testing" would "alter[ ] the settled law of this state." *Id*. at 195, 199-200. The *Jones* court cautioned, however:

> "For purposes of clarification, our holding in this case does not give law enforcement officers unbridled authority to order and conduct chemical tests. We do not suggest that a DUI arrestee's lack of a right to refuse chemical testing under section 11-501.2(c)(2) permits law enforcement officers to use physical force in obtaining blood, urine, and breath samples." *Id.* at 201.

¶ 25 Turning to the present case, when Branchini arrested the defendant in March 2011, *McNeely* had yet to be decided, and *Jones* was binding precedent holding that not only did section 11-501.2(c)(2) "clearly" allow for warrantless, nonconsensual blood draws in DUI cases involving the death or personal injury to another, it allowed for such draws in all DUI cases. *Id.* at 194, 202. Thus, Branchini could have reasonably relied on *Jones* as binding precedent authorizing the taking of the defendant's blood pursuant to section 11-501.2(c)(2). Accordingly, pursuant to *Davis*, the trial court properly determined that the good-faith exception to the exclusionary rule was applicable under the circumstances. We note that other jurisdictions that had treated the rapid dissipation of alcohol as a *per*

13

*se* exigency justifying the warrantless drawing of a DUI suspect's blood have similarly applied *Davis* in the wake of *McNeely*.  See *People v. Rossetti*, 179 Cal. Rptr. 3d 148 (Cal. Ct. App. 2014); *State v. Lindquist*, 869 N.W.2d 863 (Minn. 2015); *State v. Foster*, 2014 WI 131, 360 Wis. 2d 12, 856 N.W.2d 847.

¶ 26   On appeal, the defendant argues that for the State to invoke the good-faith exception recognized in *Davis*, it must demonstrate what Branchini actually "knew about the state of the law on blood draws for DUIs."  However, a police officer's subjective awareness of the law is "irrelevant" under *Davis*.  *United States v. Martin*, 807 F.3d 842, 847 (7th Cir. 2015).  Rather, the pertinent inquiry is whether the conduct in question was performed in "objectively reasonable reliance" on binding precedent.  *Davis*, 564 U.S. at ___, 131 S. Ct. at 2423-24.  "Thus, in determining whether the good-faith exception applies, a court must ask 'the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances.' "  *LeFlore*, 2015 IL 116799, ¶ 25 (quoting *Herring v. United States*, 555 U.S. 135, 145 (2009)).

¶ 27   Here, as indicated, Branchini could have objectively relied on *Jones* as binding precedent authorizing the taking of the defendant's blood pursuant to section 11-501.2(c)(2), even in the absence of Wilson's injuries.  As noted, the only restriction *Jones* placed on obtaining a DUI suspect's blood was that "physical force" not be used.  *Jones*, 214 Ill. 2d at 201.  Moreover, Branchini indicated that he had requested the samples of the defendant's blood "[d]ue to the severity of [Wilson's] injuries" and that there were "special laws" that allowed for such blood draws.  Thus, even assuming that Branchini's

subjective knowledge of the law was a relevant consideration, he was aware that he had the legal authority to obtain a sample of the defendant's blood under the circumstances, even though he might not have been particularly aware of our supreme court's decision in *Jones*.

¶ 28    On appeal, the State notes that section 11-501.2(c)(2) is "still valid today," and at the hearing on the defendant's motion to suppress, the State suggested that as written, *i.e.*, as applicable only in situations involving the death or personal injury to another, section 11-501.2(c)(2) may still be constitutional in light of *McNeely*.  But see *State v. Stavish*, 868 N.W.2d 670, 677-80 (Minn. 2015) (concluding that under *McNeely*'s totality-of-the-circumstances approach, the loss of life "does not reduce the quantum of evidence the State must present to prove exigent circumstances").  We need not address whether section 11-501.2(c)(2) is facially constitutional, however.  "If the case may be decided on other grounds, the constitutionality of a statute should not be addressed."  *In re Barbara H.*, 183 Ill. 2d 482, 492 (1998).  Accordingly, for the purposes of the present appeal, we presume that section 11-501.2(c)(2) is constitutional as written and that the defendant's blood was drawn solely on the basis of the *Jones* court's interpretation of the statute.  Additionally, while we recognize that *McNeely* effectively abrogated *Jones* to the extent that *Jones* held that the natural dissipation of alcohol in the bloodstream is a *per se* exigency justifying the warrantless, nonconsensual taking of a DUI suspect's blood, "[i]t is well settled that when our supreme court has declared law on any point, only it can modify or overrule its previous decisions."  *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 366 Ill. App. 3d 730, 734 (2006).  We also note that the trial court's application of

15

*Davis* was not precluded by our supreme court's decision in *People v. Krueger*, 175 Ill. 2d 60 (1996), wherein the statute at issue had not previously been subjected to judicial scrutiny. See *LeFlore*, 2015 IL 116799, ¶¶ 62-66. Finally, we note that the State did not advance a *Davis* argument in *Armer*.

¶ 29                    CONCLUSION

¶ 30    For the foregoing reasons, the trial court's denial of the defendant's motion to suppress is hereby affirmed. As the court aptly noted, even if section 11-501.2(c)(2) is deemed unconstitutional in light of *McNeely*, Branchini had acted in good-faith reliance on prior precedent upholding its validity.


¶ 31    Affirmed.

2016 IL App (5th) 150048

NO. 5-15-0048

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 11-CF-724 |
| | ) | |
| STEPHEN HARRISON, | ) | Honorable |
| | ) | Jan V. Fiss, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Opinion Filed:** February 18, 2016

**Justices:** Honorable S. Gene Schwarm, P.J.

Honorable Thomas M. Welch, J., and
Honorable Richard P. Goldenhersh, J.,
Concur

**Attorney for Appellant** Paul M. Storment, III, Storment Law Offices, 424 South High Street, Belleville, IL 62220

**Attorneys for Appellee** Hon. Brendan F. Kelly, State's Attorney, St. Clair County Courthouse, 10 Public Square, Belleville, IL 62220, Patrick Delfino, Director, Stephen E. Norris, Deputy Director, Patrick D. Daly, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 East Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864