Opal Weaver, Administrator of the Estate of Loren L. Weaver, Deceased, Plaintiff-Appellee, v. Bert Lovell, d/b/a Towne Tavern, Defendant-Appellant, and John E. Bowles, d/b/a Ken's Tavern, Defendant.

Gen. No. 11,200.

Fourth District.

August 31, 1970.

Costigan & Wollrab, of Bloomington (William F. Costigan, of counsel), for appellant.

Thomson, Thomson & Mirza, of Bloomington, and Carlon and Carlon, of Normal (Jerome Mirza, of counsel), for appellee.

CRAVEN, P. J., delivered the opinion of the court.

This is a dramshop action brought by Opal Weaver as administrator of the estate of Loren L. Weaver, deceased, for loss of means of support of herself as widow and of the minor children of decedent. Defendants were Bert Lovell, operator of a tavern in Danvers, Illinois, and John E. Bowles, operator of a tavern in Bloomington, Illinois.

A jury trial resulted in a verdict of $40,000 in favor of plaintiff against Bert Lovell and a verdict against plaintiff on her suit as to John E. Bowles. A judgment of $20,000 was entered in favor of plaintiff against Bert

Lovell and against plaintiff as to John E. Bowles. Lovell here appeals the judgment entered against him.

Weaver died in an automobile accident which occurred on July 15, 1967, in McLean County, between an automobile driven by Wayne Coyle and one driven by Loren L. Weaver. Plaintiff's action is based upon the theory that Coyle was intoxicated at the time of the collision, that his intoxication was a cause of the collision, and that defendants each sold or gave him intoxicating liquor which caused, in whole or in part, his intoxication.

The automobile accident occurred on Route 22, two miles east of Stanford, Illinois, between the 1960 Chevrolet driven by Coyle and the 1955 Plymouth driven by Weaver. State Police Officer Wayne Hicks testified at the trial that he arrived at the scene of the accident approximately forty-five minutes after the accident occurred and that he observed the then position of the vehicles and the skid marks. He identified certain photographs of the accident scene and located on them an area which he judged to be the point of impact. The photographs, admitted into evidence, showed the damage to the vehicles, where they came to rest following the collision, and some 133 feet of skid marks left by Coyle's car as it crossed the center line of the highway and struck Weaver's car. The trooper expressed his opinion that "In my judgment the 1960 Chevrolet crossed the center line and struck the '55 Plymouth in the westbound lane, I guess."

The evidence shows that at approximately 10:00 a.m. on the day of the accident, Wayne Coyle visited Ken's Tavern in Bloomington, operated by defendant John E. Bowles, where Coyle drank two 12-oz. bottles of beer and remained approximately forty-five minutes. He then drove thirty miles to Congerville, where he visited his brother-in-law, Carol Meyer, from 11:45 or 12:00 noon to 12:20 p.m., and there drank a 12-oz. can of beer.

341

He left his brother-in-law and apparently drove to the Towne Tavern in Danvers which was operated by defendant, Bert Lovell, arriving there between noon and 1:00 p. m. He was in the Towne Tavern approximately one-half hour, where he had one drink consisting of an ounce of Paul Jones 80-proof whisky in a 7-oz. glass, mixed with ice and Coca-Cola. From the Towne Tavern he went to the home of an old friend, Charley Erps, where he remained for approximately a half hour. He then went to a restaurant in Danvers where he had coffee and something to eat. He returned to the Towne Tavern a little after 2:00 p. m., stayed there twenty minutes, and while there drank one highball containing an ounce of Paul Jones 80-proof whiskey, ice and Coca-Cola in a 7-oz. glass. He left the Towne Tavern at 2:30 p. m., which was the last that anyone observed him prior to the automobile accident at about 3:00 p. m.

Coyle was removed from the accident scene to St. Joseph's Hospital prior to 4:00 p. m. Four hours later, a laboratory technician, at the request of a doctor, took a sample of his blood to make a blood-alcohol test. The blood-alcohol test was performed shortly after 9:00 p. m. Over objection, the medical technologist who performed the test testified that the percentage of blood-alcohol shown by this test was .04 percent weight per volume. The hospital records showed that a drug, Arramine, was ordered for Coyle at 4:20 p. m.; that he was given phenobarbital at 4:20 p. m., an intravenous saline solution at 4:35 p. m., and a blood transfusion at 5:45 p. m. The technician who took the blood sample did not recall whether Coyle was conscious or unconscious at the time the sample was taken.

At the trial several lay witnesses who saw and observed Coyle on the day of the accident testified from their observations that he was sober.

Carol Meyer, his brother-in-law, testified that at the time of Coyle's visit at his home from approximately

11:45 a. m. until 12:20 p. m., they conversed with each other and that, based upon his observation, Coyle was perfectly sober. Walter Siebert and Beda Siebert testified that they saw Coyle on his first visit, between noon and 1:00 p. m., at the Towne Tavern, saw him come in and leave and heard him talk to Dorothy DeHart. They observed him for approximately fifteen minutes. They expressed an opinion that he was sober. However, Beda Siebert said she didn't talk to Coyle and she didn't overhear any of his conversation. Dorothy DeHart was ill at the time of trial and did not testify. Charley Erps testified that while Coyle was at his home, he saw Coyle walk and talk, observed his motions, didn't smell liquor or beer on him, and was of the opinion that he was sober. Beverly Neal, a waitress in the restaurant at Danvers where Coyle drank coffee and ate a ham sandwich at about 2:00 p. m., testified she talked with him there and that his appearance, speech and actions were normal at that time. Marilyn Lovell, the wife of Bert Lovell, was on duty in the Towne Tavern on the occasion of both visits of Coyle there. She testified that, in her opinon, Coyle was sober on both occasions.

Dr. John Maloney, a licensed physician and surgeon and the resident pathologist at St. Joseph's Hospital, called by plaintiff, testified that he reviewed the results of the test for blood-alcohol which were .04 percent. Over objection that his testimony was highly speculative, he was permitted to testify that based upon the facts before him of the .04 percent blood-alcohol at 9:00 p. m. and then receiving 500 cc.'s of blood at 5:45 and a saline solution and phenobarbital, he would conclude that the blood-alcohol level in Coyle's bloodstream at 3:00 p. m., six hours prior to taking of the sample, should be .16 percent if maximum absorption had occurred. He stated that he based this conclusion upon the constant that the straight-line rate of .02 percent per hour decrease by oxidation in blood-alcohol would be

expected physiologically. He stated that he would tend to ignore the saline and blood transfusions.

Dr. Seymour Goldberg, a physician specializing in internal medicine, practicing in Bloomington, Illinois, called by plaintiff as an expert witness, testified over objection, in answer to a hypothetical question, that a male, 36 years of age, assumed to have consumed two 12-oz. bottles of beer between 10:00 and 11:00 in the morning, an additional or third 12-oz. bottle or can of beer between 11:45 a. m. and 12:15 p. m., a beverage consisting of one ounce of 80-proof whiskey mixed in a 7-oz. glass with ice between 12:00 noon and 1:00 in the afternoon, and another beverage consisting of a shot of 80-proof whiskey mixed in a 7-oz. glass with ice an hour and a half to two hours later, and who was involved in an automobile collision at 3:00 p. m. on that day, would have an impairment of his mental and physical faculties so as to diminish his ability to think and act with ordinary care at 3:00 p. m. that day.

Dr. Goldberg further testified that the degradation rate of alcohol is .02 percent per hour and that assuming a blood-alcohol test of an individual's blood-alcohol level or percentage of alcohol in his bloodstream at 9:00 p. m. was .04 percent, it would have been at least .16 percent at 3:00 p. m., six hours earlier. He then testified that, in his opinion, based upon a reasonable degree of medical certainty, an individual with a percentage of .16 alcohol in his bloodstream would be drunk.

Defendant contends that it was reversible error to permit Dr. Goldberg to testify as an expert witness as to his opinion on the question of Coyle's intoxication. He urges that this is a subject matter which is within the realm of common knowledge and requires no particular scientific knowledge, and that expert testimony elicited on a hypothetical basis is not admissible upon issues which are within the realm of common knowledge. Fur-

344

ther, he contends that such testimony invades the function of the jury as it was the ultimate issue which was for the jury to determine.

 It is a well-established rule of evidence that, generally, the opinions of witnesses are inadmissible as evidence as witnesses are to testify as to the facts and the jury is to draw the inferences and form the opinions which are to govern the case. However, this rule is relaxed in certain situations where the facts are patent to the observation of all, in which cases opinion testimony of lay witnesses qualified by observation is admitted. Drunkenness or sobriety are within this area, so that witnesses qualified by personal observations may state their opinions on intoxication. Such testimony of lay witnesses was presented by defendant in this case.

 The general rule further has been relaxed to permit opinion evidence on questions of science, skill or trade by expert witnesses where there is need for such knowledge to aid the jury in determining the question in issue and in understanding technical and scientific aspects of the case.

In Dimick v. Downs, 82 Ill 570 (1876), the Supreme Court held that lay witnesses qualified by observations of a person, might express opinions, based upon such observations, as to whether a person was drunk or sober. There is language in that case which infers that such facts required no peculiar scientific knowledge. However, it was not a case in which an expert's opinion was offered.

In Abramson v. Levinson, 112 Ill App2d 42, 250 NE2d 796 (1st Dist 1969), in considering opinion evidence of a reconstruction expert in an automobile accident case, this court observed that the need of such expert should be the exception rather than the rule, but we also there noted that expert testimony might be admitted where there is "a need apparent from the record in the case for scientific knowledge, expertise and experience

345

which will aid the jury to a correct and a just result."
(At 50, 250 NE2d at 801.) We further observed in
that case that such expert testimony was admissible
under safeguards.

This matter was in issue in Nystrom v. Bub, 36 Ill
App2d 333, 184 NE2d 273 (2nd Dist 1962), and in Schnei-
der v. Kirk, 83 Ill App2d 170, 226 NE2d 655 (2nd
Dist 1967), both of which were dramshop cases. In
Nystrom, where testimony was offered of a chemist em-
ployed by the Illinois State Bureau of Criminal Identifi-
cation and Investigation that a hypothetical man, aged
39 years, weighing 130 pounds, with very little to eat
during the day, who had three 12-oz. bottles or cans of
beer between 10:00 and 11:00 p. m., would not have
been intoxicated by midnight, the court held that it was
not reversible error to refuse to admit such testimony
by this particular witness. While the court there stated
that where the court and jury can make their own de-
ductions they should not be made by those testifying,
it held that the question of qualification of an expert
rests largely in the discretion of the trial court and that
there was no abuse of discretion in refusing the testi-
mony of the chemist in that case.

In Schneider, the same court that rendered the Ny-
strom decision reaffirmed the rule of the Nystrom case
as to when expert testimony is admissible, but express-
ly overruled the application of the rule by the earlier
case. Schneider held that it was reversible error to re-
fuse to admit testimony of a pathologist on the question
of whether the rate of oxidation and elimination of al-
cohol from the bloodstream was such that two beers
drunk between 5:00 and 6:00 p. m. at the defendant's
tavern could not have contributed in whole or in part
to intoxication of the alleged intoxicated person who
drank nothing more until 9:30 p. m. at another place,
after which the accident occurred.

■ We are of the opinion that no general rule can logically or reasonably be formulated to the effect that expert opinion testimony upon a matter or issue is never admissible where lay testimony may be had upon it. Each case must be considered in its factual background with the subject matter involved, the nature of the specific testimony offered, and in light of the particular question which is asked.

■ Defendant's contention that it was error to permit Dr. Goldberg, as an expert, to give an opinion as to Coyle's intoxication because it invaded the function of the jury, is not sound. While there were ultimate issues required to be determined there other than the issue of intoxication, the opinion on that subject, based upon assumed facts, did not usurp the function of the jury. The testimony was merely the opinion of the witness given upon a state of facts assumed to be true and the final determination remained for the jury. In Clifford-Jacobs Forging Co. v. Industrial Commission, 19 Ill2d 236, 242–243, 166 NE2d 582 (1960), the court approved the discussion of this problem in Chicago Union Traction Co. v. Roberts, 229 Ill 481, 484, 82 NE 401 (1907), where it was said:

> ". . . It is not the province of an expert to act as judge or jury. He cannot be called upon to decide a question of fact. The object of a hypothetical question is to obtain the opinion, upon a subject not within the knowledge of men of ordinary experience, of one who by a previous course of habit or study has acquired a knowledge of that subject. The hypothetical statement of facts must be taken to be true. The opinion is permitted to be given to enable the jurors to draw the inferences from the evidence which their want of knowledge would otherwise prevent. In this case the question was whether the appellee's condition was due to traumatism or other

347

causes. It was a question for the jury to determine, but it was impossible for them to answer without hearing the opinions of physicians. These opinions did not invade the province of the jury. (Citing cases.) . . . ."

The Clifford-Jacobs case further held the form of the question in terms of "what did" or "what might" have caused the injury was immaterial. (At 243, 166 NE2d at 587.) To the same effect is Carlson v. New York Life Ins. Co., 76 Ill App2d 187, 222 NE2d 363 (2nd Dist 1966).

██ While an expression of opinion by a lay person as to intoxication based upon observation of an individual is permissible, the subject is one in the medical field where the assistance of expert testimony will aid the jury in reaching a conclusion. It was not reversible error, therefore, to permit the expert to give his opinion based upon the hypothetical question even though lay opinion testimony had been presented on the same subject matter.

██ No contention is made on this appeal of error in admitting the testimony of Dr. Maloney or of Dr. Goldberg as to rate of oxidation and absorption of alcohol in the bloodstream, or the opinion given by Dr. Goldberg that an individual with .16 percent alcohol in his bloodstream would be drunk. These were proper subjects for expert testimony as they concerned matters outside the knowledge of the average person and were relevant and significant evidence on a material issue in the case. Schneider v. Kirk, supra; Miller v. Pillsbury Co., 33 Ill2d 514, 211 NE2d 733 (1965).

Defendant contends, however, that the results of the chemical analysis of Coyle's blood were improperly admitted and resulted in reversible error since the standards for admission of such tests and the acquisition of blood samples for the purpose are governed by section 144, chapter 95½, Ill Rev Stats 1969. He further contends there was failure to comply with these guideline

standards in that the evidence shows Coyle did not consent to the taking of blood from his body and no law-enforcement officer requested the test be made.

The statute referred to is a portion of the Illinois Motor Vehicles Act which is concerned primarily with the offense of driving while intoxicated and the revocation of a chauffeur's or operator's license for that reason. Subsection (c) of this section provides:

> "Upon the trial of any action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time . . . alleged as shown by a chemical analysis of his . . . blood, . . . is admissible, as provided hereinafter in this paragraph (c) and the result of any such analysis shall give rise to the following presumptions: . . . ."

The section further provides that evidence based upon a chemical analysis shall not be admitted "unless such substance was procured and such analysis made with the consent of the person as provided for in section 47.1 of this Act, . . . whose bodily substance was so analyzed." (Section 144, subsection (c), par 3.) (Footnote omitted.) Subsection (d) requires the analysis to be made according to certain standards. Subsection (e) provides that when an unconscious person is given a blood test at the request of a law-enforcement officer under section 47.1 of the act, only a physician authorized to practice medicine in all its branches, a registered nurse, or other qualified person may withdraw blood.

 While the language of subsection (c) of section 144 is broad as to the type of proceeding to which the provisions apply, it is not exclusive as to the admission of testimony as to the results of blood-alcohol sample tests in proper cases. The statute merely pro-

vides that the results of a blood-alcohol analysis test, when taken under the standards therein provided, shall give rise to certain presumptions as therein set forth. It specifically provides that its provisions shall not limit the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of intoxicating liquor. The provisions of this section that the results of the test shall not be admitted unless the substance was procured and the analysis made with the consent of the person "as provided for in Section 47.1 of this Act, . . ." and as to a test taken on an unconscious person at the request of a law-enforcement officer "under Section 47.1 of this Act, . . ." are meaningless since there is no section 47.1 to the act. In any event, these limitations did not apply in the instant case. The testimony here was not limited to the raising of the statutory presumption but was used as the basis for expert testimony. The testimony as to the results of the blood-sample tests was not rendered inadmissible in this proceeding by the statute. The jury was entitled to consider this testimony along with all other properly admitted testimony on the subject of intoxication.

Defendant further contends as error certain statements made by plaintiff's counsel in his argument to the jury which he says, by inference, informed the jury that defendants were insured against the liabilities imposed by the Dram Shop Act. These consisted of a statement that the sale of liquor caused certain dangers and harms but that such sale had been permitted under the regulations of dramshop legislation; that an industry producing such harms and ills bears a responsibility for what it produces; and that "The liquor business is aware of this responsibility and they can make plans and be aware of the contingency that results." This argument did not expressly mention the term "insurance," and a reasonable interpretation of it results in other reasonable

350

and logical meanings than that defendants here were insured. While we do not condone this type of argument, we do not deem it a ground for reversible error.

 As a final ground for error, defendant contends that the instant case being a "by" theory dramshop case, plaintiff must prove that the death of Weaver was caused by the tortious act of an intoxicated person and that the evidence here fails to prove a wrongful or tortious act on the part of Coyle. The testimony of the State Police and the admissions of defendant's counsel on closing argument affirmatively show that Coyle's car struck Weaver's car in Weaver's lane of traffic. No contradictory testimony appears. Such proof was sufficient to sustain plaintiff's burden of proof that the death was caused by tortious or fault conduct. Schneider v. Kirk, supra.

We find that no grounds for reversible error exist and that the trial court judgment should be affirmed.

Judgment affirmed.

SMITH and TRAPP, JJ., concur.