THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* EDWARD
LEFFEW, JR., Defendant-Appellee.

(No. 74-430;

Second District (2nd Division)—November 26, 1975.

Jack Hoogasian, State's Attorney, of Waukegan (Edward N. Morris and Christine M. Drucker, both of Illinois State's Attorneys Association, of counsel), for the People.

Thomas M. P. Hannigan, of Mundelein, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was indicted for involuntary manslaughter as a result of an automobile accident in which he allegedly drove through a stop sign and hit the victim's car broadside.

The defendant was slightly injured and was taken to a hospital immediately after the accident. While he was there a police officer entered his room and spoke to the defendant. At that time the officer noticed an odor of alcohol on the defendant's breath and that his speech was not normal. The defendant told the officer he had drunk six or seven beers over a 13-hour period prior to the accident. The officer then gave the defendant his *Miranda* warnings and told him he was under arrest for driving while intoxicated.

The officer and the defendant both testified that after being told his rights, including his right to consult with his attorney, the defendant stated he wished to talk with his attorney and his wife. Apparently this was not followed up by any action either by the officer or by the defendant. However, a few minutes later the officer asked the defendant to sign a brief statement giving permission to the hospital to take a sample of the defendant's blood and the defendant signed this paper which the officer had prepared. It read as follows: "I, Edward Leffew, Jr., hereby give permission to have a doctor withdraw blood from my arm for tests."

Pursuant to this permission a blood sample was taken from the defendant. It is not indicated what the reading was. The defendant was subsequently charged with involuntary manslaughter and was indicted. At a hearing *in limine* prior to his trial, defense counsel moved to suppress the blood sample on the ground that the doctor, in taking the sample, did not adhere to the rules of the Department of Public Health in that he swabbed the area from which the sample was taken with alcohol, whereas Rule 8.01 of the Department of Public Health states that some other solution than alcohol is to be used to disinfect the area of the injection when taking a blood sample. The rule states in part as follows:

"Blood Collection. When a person is arrested and detained in the custody of police and such person requests an additional test (a blood test) to determine the amount of alcohol present, the blood sample shall be collected according to the following procedure(s).

(a) Disinfectant. Alcohol or other volatile organic disinfectant shall not be used to clean the skin where a specimen is to be collected. Aqueous benzalkonium chloride, aqueous merthiolate, or other suitable aqueous disinfectant shall be used."

Section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501) creating certain presumptions resulting from a blood test, states in part:

"(d) Chemical analysis of the person's blood or breath to be considered valid under this Section must be performed according to uniform standards adopted by the State Department of Public Health, in cooperation with the Superintendent of State Police, and by an individual possessing a valid permit issued by that Department for this purpose. The State Department of Public Health is authorized to approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct such analysis and to issue permits which shall be subject to termination or revocation at the discretion of the State Department of Public Health."

Upon due consideration, the trial court granted the defendant's motion to exclude the results of the blood test for failure to follow the State Department of Public Health standards, as indicated above. The State argues that the trial court's ruling was erroneous because (1) the statute involved here—section 11—501 of the Vehicle Code—applies only to cases where the defendant is charged with driving while under the influence of liquor, whereas the defendant here was charged with involuntary manslaughter, (2) the requirements of paragraph (d) as to the taking of the blood tests are necessary as a prerequisite to admission of the test in evidence only where the State seeks to invoke the presumption set forth in paragraph (c) of the statute.

·We believe the State in its construction of paragraph (c) of section 11—501 has unduly limited the intent of the statute. While the heading of the section is "ARTICLE V, DRIVING WHILE INTOXICATED, TRANSPORTING ALCOHOLIC LIQUOR, AND RECKLESS DRIVING," and the first paragraph (par. (a)) of the section states: "No person who is under the influence of intoxicating liquor may drive or be in actual physical control of any vehicle within this State," paragraph (c) clearly gives the statute a broader concept. It reads:

"(c) Upon the trial of any action or proceeding arising out of the acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his breath, blood, urine, saliva or other bodily substance is admissible, as provided hereinafter in this paragraph (c) and the result of any such analysis shall give rise to the following presumptions: * * *."

■■ The words "upon the trial of *any* action or proceeding" (emphasis added) *seem clearly to indicate that the presumptions arising as a result* of the tests are intended to apply in all situations where a trial results from the defendant's operation of a motor vehicle, whatever the precise charge may be. It is not logical to suppose, in view of this clear language of the legislature, that the tests and the presumptions arising from it, are valid only where the charge is driving while intoxicated and that the presumptions would not arise where the defendant, as a *result* of driving while intoxicated, killed a person and was charged with involuntary manslaughter. The question is whether the State laid a proper foundation for the admission of the test, and this in no way depends on the nature of subsequent charges against the defendant. It is determined rather by whether there was substantial compliance with the standards and conditions set forth in the statute, including, by reference, the rules of the State Department of Public Health. The circumstance of being a defendant in a case arising from the operation of a motor vehicle is the basis for giving the test, but the nature of the conditions under which the test is taken in no way depends upon the charges arising out of that circumstance. These conditions are prescribed by statute and are not affected by the nature of the charge. We find no cases on the precise point, but as a matter of statutory construction we reject the State's argument on this point.

The State also contends that in any event the intent of section 11—501 is only to provide a rule of evidence whereby the State, in a prosecution arising out of the defendant's conduct in the operation of a motor vehicle, may invoke certain presumptions. Therefore, the State argues, if the State does not invoke the presumption and proceeds to its proof by expert evidence as at common law, then the defense cannot invoke the Health Department rules because they are designed only to make sure the tests are reliable so that the defense would not be subjected to the presumption as a result of an unfair or inaccurate test. Therefore, the State says, if the State does not claim the advantage of the presumption

afforded by the statute and proceeds to prove the validity of the test by other evidence the test should be allowed into evidence the same as any other evidence.

■■ This is an ingenious argument but, upon analysis, not a persuasive one. The State is indulging in "construction" of the statute in advancing this theory of what was intended, but the language is clear and leaves little room for such construction. To add to the existing language by implication the meaning that if the State abides by the test conditions of paragraph (d) it can have the advantage of the presumptions of paragraph (c) but if it does not abide by the rules of paragraph (d) it can still use the test as evidence without presumption, is to amend the statute by judicial construction. This theory was advanced in *People v. Todd,* 59 Ill.2d 534, and was rejected. While that case dealt mainly with the question of consent the essence of the argument was the same— that a standard for admissibility for the test may be disregarded if the State does not seek the full statutory advantage it would derive from faithful adherence to the statute. Our Supreme Court in the *Todd* case said:

> "Finally, we cannot interpret the statute as meaning that the consent must be obtained only if the presumption is to be applied and otherwise the consent is unnecessary. The statute most clearly states that 'evidence based upon' a chemical analysis 'shall not be admitted' unless consent to the test was given. The statute does not limit its proscriptions only to those cases where the presumption is intended to be used." 59 Ill.2d 534, 544.

■■ We believe this holding can logically be applied to the case before us. We do not agree that the State has an option whereby a part of the advantage of one section of the statute can be traded off for non-performance of another part of another section. We will not presume that the Legislature so intended, especially where the language is clear and unambiguous. The State cites the case of *State v. Myers* (1971), 26 Ohio St.2d 190, 55 Ohio Op.2d 447, 271 N.E.2d 245. There the question as to the admissibility of the blood test arose because the defendant was not advised that he might have a separate test by a physician of his own choosing, if he so desired, and the police should so advise him. The police did not so advise him and he subsequently objected to the admissibility of the test given by the police. The Ohio statute did not provide as does our own, for any sanction in case of its violation. The court noted that the statutory rule in Ohio is that the reversal of a lower court's conviction on the basis of " 'the admission or rejection of any evidence offered against or for the accused' shall not be had 'unless it affirmatively appears on the record that the accused was or may have

been prejudiced thereby.'" As there was no showing of prejudice in that case the court upheld the admissibility of the test. This case is not apposite to ours since our statute provides that "[c]hemical analysis of the person's blood or breath *to be considered valid* under this Section must be performed according to uniform standards adopted by the State Department of Public Health, * * *." (Emphasis added.) This mandatory language has the effect of denying the admissibility of the test if the standards are not followed, whereas no such sanction is expressed in the Ohio statute and the Ohio court proceeded on the negative basis that the defendant must show prejudice to his defense arising from the failure to follow the statute, which the defendant did not do. Moreover, the Ohio statute from its wording appears to be exclusively concerned with driving a motor vehicle while under the influence of liquor, while the Illinois statute embraces *"any* action or proceeding arising out of the acts alleged to have been committed by any person while driving * * *." (Emphasis added.) The holding in the *Myers* case, therefore, is not applicable to the case before us.

■■ Affording full recognition to the gravity of the "drunken driving" problems, we are reluctant to deny the State the use of the evidence in question. After careful consideration, however, we are of the opinion that the trial court correctly interpreted the applicable statute and we therefore affirm the judgment below.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.