DEBRA SMOCK, Plaintiff-Appellant, *v.* HIGHWAY COMMISSIONER OF BLOOMINGTON TOWNSHIP *et al.*, Defendants-Appellees.

Fourth District   No. 14391

Opinion filed May 19, 1978.

TRAPP, J., dissenting.

James Walker, Ltd., of Bloomington, for appellant.

William A. Allison, of Bane, Allison & Saint, P. C., of Bloomington, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Plaintiff, Debra Smock, timely appeals judgments entered on jury verdicts in favor of four governmental entities in a negligence action arising out of an automobile collision in McLean County. Debra alleges that the trial court erred in denying her motion to exclude the results of a blood test performed upon the deceased driver of the vehicle in which she was riding.

On August 15, 1973, Debra, then a minor, was riding in a car with Sherry Funk and the driver, Harold Parker, when the accident occurred. Both Funk and Parker died as a result of the accident; Debra was thrown from the car and suffered extensive facial injuries, including the loss of an eye. After Parker's body was transported from the scene, two samples of blood were taken. One sample was sent to the Department of Public Health laboratories in Chicago. The other sample went to a lab in Bloomington.

Debra's complaint against the governmental defendants was based upon their failure to properly post signs and maintain the roads. Prior to the incident in question, defendants were aware of prior collisions and near collisions at the intersection and had received numerous requests to correct the situation. On two different occasions, the county had conducted speed studies which indicated that the speed limit for that portion of road should have been reduced. After the occurrence, certain signs were erected and the speed limit was reduced from 65 mph to 40 mph.

Prior to trial, Debra filed a motion to exclude the blood-alcohol results from the samples and any evidence based thereon. The trial court allowed the motion as to the sample tested at the Department of Public Health laboratory in Chicago, but refused to exclude the results of the sample tested in Bloomington. At trial, Dr. Hans Stroink, a physician, testified that the Bloomington sample revealed a blood-alcohol level of .262 per mille. In his opinion, a person with that level of blood alcohol would be intoxicated. Defendants offered testimony that Parker had been drinking on the day of the accident, but no one who saw him that day, including persons who saw him leave a tavern shortly before the accident, gave an opinion that he was intoxicated. The jury, by special interrogatory, found that plaintiff was not contributorily negligent. The jury found for all of the governmental defendants and judgment was entered on the verdict. The jury verdicts as to others are not before us. Plaintiff's post-trial motion preserving the issue was denied.

We must decide whether a third party may object to the admission into

evidence of a blood-alcohol analysis when the blood sample was taken without the person's consent. In short, section 11—501 of The Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501) provides that blood test analysis of the intoxication of an automobile driver cannot be used in any proceeding, unless the testing was done with the consent of the driver. It reads:

"(c) Upon the trial of any action or proceeding arising out of the acts alleged to have been committed by any person while driving * * * under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his * * * blood, * * * is admissible, as provided hereinafter in this paragraph (c) * * *:

* * *

3. * * * Evidence based upon a chemical analysis of blood * * * shall not be admitted unless such substance was procured and such analysis made with the consent of the person * * *." Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(c).

Debra argues that this statutory proscription is available to parties other than the driver; the defendants argue that only the driver may invoke the statute. Defendants seek to introduce this evidence to support their theory of the case, *i.e.*, that it was Parker's intoxication, rather than any negligent acts on the defendants' part, that was the proximate cause of the accident.

We recognize this court found that competent blood-alcohol results were relevant evidence as tending to prove someone other than the city proximately caused the accident in *French v. City of Springfield* (1972), 5 Ill. App. 3d 368, 283 N.E.2d 18, but the absence of consent was not raised in that case. Debra argues that section 11—501 expresses a public policy aimed against use of results of nonconsensual blood samples. *People v. Todd* (1975), 59 Ill. 2d 534, 322 N.E.2d 447, is controlling on this point:

"Our analysis of the statutes leads us to the inevitable conclusion that consent must be obtained if evidence based on a blood or similar test is to be used *in any trial* arising out of acts supposedly committed by a person driving a vehicle while intoxicated." (Emphasis added.) 59 Ill. 2d 534, 544, 322 N.E.2d 447, 453.

We would do violence to the plain language of *Todd* if we were to hold the court construed the statutory limitation as only personal to the individual subject to prosecution or other civil action. If the court intended any such strange result, it most clearly would have said so. In this case, there is no question that the deceased driver could not give his consent to the blood samples taken; he will be presumed to have withheld his consent (accord, Ill. Rev. Stat. 1973, ch. 95½, par. 11—501.1(e)).

This court, in *Swank v. Bertuca* (1976), 41 Ill. App. 3d 229, 353 N.E.2d 415, held that certain sections of "An Act to revise the law in relation to

coroners" (Ill. Rev. Stat. 1973, ch. 31, par. 1 *et seq.*) regarding the inadmissibility of the results of certain blood samples (taken as part of a statistical scheme) could not be stipulated away by the parties in a suit. Section 10 of the Act states, in part:

> "In cases of accidental death involving a motor vehicle in which the decedent was (1) the operator * * * the coroner shall require that a blood specimen * * * be withdrawn from the body of the decedent * * *. [The sample shall be analyzed for] * * * the alcohol * * * content of such blood * * *. The results of the statistical examinations referred to in this paragraph shall not be admissible in evidence in any action of any kind in any court * * *." Ill. Rev. Stat. 1973, ch. 31, par. 10(e).

■■ In *Swank*, the practical result was that a third party could successfully raise the coroner's act as a bar to the admissibility of a blood sample taken from a deceased driver. Here, the Illinois Vehicle Code evinces the same public policy of not allowing the test results of blood samples into evidence, absent consent, "[u]pon the trial of any action." It would be anomalous in this case for us to hold the sample of Parker's blood taken for purposes of the coroner's act to be inadmissible as against public policy and to allow the admission of test results of a second sample taken at the same moment and without consent. Since we find this case to be indistinguishable from *Swank*, we hold that a third party may object to the admission of a blood sample taken under the color of the Illinois Vehicle Code; since there was no consent given by the driver, the trial court improperly denied the motion in limine. *Todd.*

The judgment of the trial court is reversed, and the cause remanded for a new trial.

Reversed and remanded.

REARDON, P. J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The record in this case discloses that the coroner's pathologist serving pursuant to section 10.1 of the coroner's act (Ill. Rev. Stat. 1973, ch. 31, par. 10.1), was directed by the coroner to perform an autopsy upon the deceased driver in addition to forwarding a sample of blood to the Department of Public Health.

Parker, the driver, apparently died at the scene of the collision. The pathologist testified that the autopsy disclosed an alcohol level of .262 per milligram, that such level would impair the driver's judgment and reaction, that that impairment "would be severe," and that in the opinion of the witness, Parker was intoxicated.

The docket entry of the trial judge reflects that the motion *in limine* was allowed as to:

"[T]he test performed by the Department of Public Health under the Coroner's Act. The motion is denied as to the results of the Coroner's pathologist."

The evidence of intoxication disclosed by reason of such discretionary autopsy is competent, material, relevant, and probative upon the issue of proximate cause for the injuries sustained by plaintiff. (*French v. City of Springfield* (1972), 5 Ill. App. 3d 368, 283 N.E.2d 18.) Defendant argues that the evidence is admissible for such purpose.

Section 10 of the coroner's act (Ill. Rev. Stat. 1973, ch. 31, par. 10) provides:

"Every coroner, whenever, as soon as he knows or is informed that the dead body of any person is found, or lying within his county, whose death is suspected of being:

(a) A sudden or violent death, whether apparently suicidal, homicidal or accidental, including but not limited to death apparently caused or contributed to by thermal, traumatic, chemical, electrical or radiational injury, * * *;

\* \* \*

(e) A death where the decedent was not attended by a licensed physician; shall go to the place where the dead body is, and take charge of the same and shall make a preliminary investigation into the circumstances of the death. In the case of death without attendance by a licensed physician the body may be moved with the coroner's consent from the place of death to a mortuary in the same county. *Coroners in their discretion* shall notify such physician as is designated in accordance with Section 10.1 *to attempt to ascertain the cause of death, either by autopsy or otherwise.*" (Emphasis supplied.)

In this portion of the act the coroner is granted a discretion to direct an autopsy or other examination of the decedent.

The provisions of the act concerning tests in an accidental death by a motor vehicle quoted in the principal opinion follows such language. We note that such provision for tests by the Department of Public Health is equally directed to pedestrians 16 years or older.

We note the language of the portion of the act at issue:

"The results of the statistical examinations referred to in this paragraph shall not be admissible in evidence in any action of any kind in any court or before any tribunal, board, agency or person, *but shall be used only for statistical purposes.* * * *." (Emphasis supplied.) Ill. Rev. Stat. 1973, ch. 31, par. 10.

In the light of such language we examine the legislative history of the

coroner's act. Section 10 (Ill. Rev. Stat. 1955, ch. 31, par. 10) limited the coroner's use of autopsy to those instances where the death was believed to result from a criminal agency. In 1957 the statute was amended to provide for the discretionary autopsy as presently stated in the statute. In 1965 the Act provided for the statistical blood test program of the Department of Public Health in the period of January 1, 1966, to January 1, 1967. No change was made in the provisions for a coroner's autopsy. In 1967 the statute made no provision for the statistical blood test by the Department of Public Health. In 1969 there was likewise no provision for tests by the Department of Public Health, but the discretionary autopsy by the coroner was retained. In 1971 the statute retained the discretionary autopsy and added a paragraph for statistical tests by the Department of Public Health for the period of July 1, 1971, to July 1, 1973. The statute, in 1973, retained the present form of discretionary autopsy and continued the program of the statistical blood test by the Department without limitation as to a period of years.

It seems proper to conclude that the statutory history indicates that the discretionary autopsy of the coroner is an independent provision of the statute continuing without change since 1957, whereas the statistical test program of the Department of Public Health was the subject of some legislative experiment until retained without limitation.

In *Swank v. Bertuca* (1976), 41 Ill. App. 3d 229, 353 N.E.2d 415, the issue was whether the report of a departmental test of blood alcohol could be introduced into evidence in a dramshop action. This court concluded that the legislature had determined that the records of the Department of Public Health were authorized and maintained for statistical purposes only, and that as a matter of legislative determination of public policy the records of the Department of Public Health should not be admitted into evidence. An examination of the language of the statute discloses no legislative determination of public policy directed to the use of an autopsy report prepared under the authority of the coroner's act.

The principal opinion adopts the argument of plaintiff that *People v. Todd* (1975), 59 Ill. 2d 534, 322 N.E.2d 447, is the source for determining the public policy under the coroner's act.

*Todd* considered only the provisions of section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—501.1). Such provisions concerned only the concept of "implied consent" of an operator of an automobile for analysis of breath or blood for alcoholic content. As noted in *Todd*, the provision for such tests are applicable only following a lawful arrest and such provisions are directed to prosecutions for a misdemeanor and revocation of an operator's license.

In *Todd*, the supreme court noted the amendment of the statute in 1967 in correlation with the decision in *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, which held that a taking of blood without consent for the analysis of alcohol content did not violate any constitutional right of the individual. The opinion in *Todd* then concluded that absent a limiting statute, consent was not required for the taking of a blood sample. 59 Ill. 2d 534-45, 322 N.E.2d 447-53.

It appears that in *Todd* the court deemed that the 1967 amendment to section 11—501 to be a legislative response to the decision in *Schmerber* which was designed to preserve the privilege of an individual driver prosecuted or subject to action for driving while intoxicated.

The *Todd* opinion termed the provisions limiting the use of the tests so provided under the "implied consent" law "an unfortunate result and a cruel anomaly." (59 Ill. 2d 534, 544, 322 N.E.2d 447, 453.) This opinion projects the result and the anomaly into civil actions where no claim of privilege against self-incrimination is relevant.

It is not apparent how the provisions of the Illinois Vehicle Code should become the source in construing the antecedent provisions of the coroner's act.

I would affirm the trial court.