JAMES R. THOMAS, Plaintiff-Appellant, v. TERRANCE M. BRANDT *et al.*, Defendants-Appellees.

Fifth District   No. 5—85—0254

Opinion filed May 23, 1986.—Rehearing denied June 26, 1986.

John C. Webster, of Williamson, Webster & Blain, Ltd., of Alton, for appellant.

John L. McMullin and Thomas J. Horn, both of Brown, James & Rabbitt, P.C., of St. Louis, Missouri, for appellees.

JUSTICE KARNS delivered the opinion of the court:

Plaintiff, James R. Thomas, appeals from the judgment of the circuit court of Madison County entered in favor of the defendants, Terrance M. Brandt and Conoco, Inc., upon a jury verdict in plaintiff's action to recover damage for personal injury resulting from a motor vehicle accident.

Plaintiff was injured on September 19, 1980, when the tractor trailer vehicle he was operating collided with the tractor trailer rig operated by defendant Brandt and owned by defendant Conoco, Inc. At the time of the collision, plaintiff was driving on Interstate Route 64 in a westerly direction near the Albers, Illinois, interchange. Defendant Brandt had parked his rig on the shoulder. The dispute centered on whether the collision occurred in the right-hand lane as Brandt was pulling onto the highway or on the shoulder when plaintiff lost control of his vehicle, drove off the highway and struck Brandt's tractor and trailer while it was parked on the shoulder.

The principal error relied on for reversal is the admission of testimony concerning plaintiff's consumption of alcohol and possible intoxication. Other errors assigned concern conduct of defense counsel alleged to have denied plaintiff a fair trial and the refusal of the trial court to give plaintiff's tendered instructions derived from Federal Highway Administration regulations.

As a result of the collision, plaintiff was trapped beneath the tractor of his rig for approximately three hours and suffered fractures of the left kneecap, left tibia and fibula and right ankle. He lay in a pool of diesel fuel, antifreeze, brake fluid and air conditioner fluid that had spilled from the engine, resulting in burns to the skin. Antifreeze and brake fluid contain alcohol, and it is contended, without proof, that this could contribute to the alcohol blood test result. The accident occurred at approximately 5 a.m. When removed, plaintiff was taken to the emergency room at Belleville Memorial Hospital at 8:15 a.m. Without consent, a blood alcohol test was conducted at 11:55 a.m. The test indicated alcohol content of .114%.

Mark Schaefer, a hospital technician, testified by way of deposition that he did not recall whether he or Sally Veenstra performed the blood alcohol test, but that Veenstra was not certified by the Illinois

Department of Public Health to perform this test as required by section 11—501(d) of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(d) (now Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2)). He testified that worksheets detailing the procedure employed in performing such tests were kept by the hospital but that this record as well as all others for 1980 had been lost. The notation "this result cannot be used for legal purposes" was stamped on the sheet setting forth the test result. Neither the test result nor Schaefer's testimony was introduced in evidence at the trial, but was utilized to support plaintiff's motion *in limine* to exclude any reference to the test or plaintiff's consumption of alcohol.

Plaintiff's motion *in limine* to exclude any reference to the blood test or intoxication was denied, and Dr. Stephen Kappel, the orthopedic surgeon who treated plaintiff was allowed to testify. He testified that he did not order the test, which was done in the emergency room, or utilize it in his treatment of plaintiff, but that it was the kind of test customarily relied on by doctors in their treatment of patients, particularly in the administration of anesthesia, which was administered to plaintiff prior to surgery. When he first saw plaintiff, it was his opinion that he was not intoxicated. Defense counsel was allowed to elicit, however, that based on the blood alcohol test result, which was .114% at 11:55 a.m., the accuracy of which Dr. Kappel could not attest to, he would think plaintiff had consumed alcoholic beverage and was intoxicated four hours prior to the taking of the test and "his ability to function" was impaired; although, he could not give an opinion in this particular case as "individual capacities vary" and was not qualified to express an opinion on the rate of elimination of alcohol from the blood.

There was no other evidence of intoxication or the consumption of alcohol. Jerry Hale was a truck driver who had driven his rig in tandem with plaintiff during the night; he also assisted plaintiff after the accident and testified on behalf of plaintiff as an occurrence witness. They were in C.B. radio contact and had stopped for coffee at Paducah, Kentucky, and Mt. Vernon, Illinois. He testified that plaintiff had not consumed alcohol prior to the accident and was not intoxicated. Neither the investigating state police officer nor the ambulance attendant noted any evidence of drinking. Plaintiff testified that while he was pinned under his tractor, someone gave him a bottle of liquor, he thought vodka, which he drank from in an effort to ease his pain. No other witness saw plaintiff drink any alcoholic beverage.

■ The admissibility of evidence of intoxication based on blood alcohol tests in a civil case appears somewhat clouded from an examina-

tion of the legislation relating to driving while intoxicated and the case law interpreting several versions of the statute prohibiting driving under the influence. It is clear that the improper admission of evidence of intoxication is highly prejudicial. *Clarke v. Rochford* (1967), 79 Ill. App. 2d 336, 224 N.E.2d 679.

*Woolley v. Hafner's Wagon Wheel, Inc.* (1961), 22 Ill. 2d 413, 176 N.E.2d 757, may be considered as expressing the common law rule in Illinois governing the admissibility of blood tests as evidence of intoxication in a civil case, there an action under the Dramshop Act. The question before the court was the foundation proof required as a predicate to the admissibility of the test itself as evidence of intoxication. In distinguishing civil cases from criminal prosecutions, the court stated that in a civil case the foundation proof need not exclude every possibility of identity of the blood specimen or possibility of change in condition of the blood "[i]f the routine and procedures of a laboratory are shown by the evidence as having been commonly accepted by the medical profession, and the business of a laboratory is the securing, handling, and analysis of blood specimens." (22 Ill. 2d 413, 418-19, 176 N.E.2d 757, 760.) Discrepancies in the adequacy of the records or handling would go only to the weight to be accorded the evidence. As to the general admissibility of evidence obtained by blood analysis, the supreme court adopted the opinion of the appellate court (*Woolley v. Hafner's Wagon Wheel, Inc.* (1960), 27 Ill. App. 2d 1, 169 N.E.2d 119).

The appellate court decision, assuming proper foundation proof, held that it was proper for a physician, there a pathologist, to testify as an expert that a blood alcohol content of .166% would mean that the person from whom the blood was taken was intoxicated. This was essentially the testimony of Dr. Kappel in the present case, except here there was no foundation proof as to the precise manner of taking the blood and conducting the test and the only evidence before Dr. Kappel was the bare tests results. No attempt is here made to justify Dr. Kappel's testimony on the basis of the technician's, Schaefer's, testimony, which was only considered by the trial court in ruling on plaintiff's motion *in limine*. We may assume that the foundation proof would have been inadequate (see *Watson v. Fischbach* (1972), 6 Ill. App. 3d 166, 284 N.E.2d 720), a matter we need not decide, as plaintiff relied on the recent case of *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, to justify the admission of Dr. Kappel's testimony.

Subsequent to the decisions in *Woolley v. Hafner's Wagon Wheel, Inc., Weaver v. Lovell* (1970), 128 Ill. App. 2d 338, 262 N.E.2d 113, also a dramshop action, was decided. A physician was allowed to tes-

tify as an expert that a person with a blood alcohol percentage of .16 would be intoxicated with impairment of his mental and physical faculties. Objection was raised that the result of the blood alcohol test was improperly admitted in evidence when there was no compliance with section 47 of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1969, ch. 95½, par. 144). The blood specimen had been taken without the consent of the allegedly intoxicated person and had not been analyzed in accordance with the standards set out in the Act. The court held that the Act did not govern the admission of evidence in all cases and was only applicable where the results of the test were introduced to raise the presumptions set out in the Act relative to intoxication depending on the percentage of alcohol in the blood. There the percentage of blood alcohol was the basis of expert testimony and was not used to raise a presumption of intoxication.

Subsequently, the supreme court decided *People v. Todd* (1975), 59 Ill. 2d 534, 322 N.E.2d 447. *Todd* was a consolidation of three criminal cases involving charges of reckless homicide growing out of motor vehicle accidents. In each case blood alcohol tests were performed on the defendant without his consent as required by section 47(c)(3) of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1969, ch. 95½, par. 144(c)(3)) and its successor Act, section 11—501(c)(3) of the Illinois Vehicle Code (Ill. Rev. Stat. 1971, ch. 95½, par. 11—501(c)(3)). The court reviewed what it characterized as the "bizarre" history of this legislation as to the requirement of consent. The court rejected the reasoning of *Weaver* that limited the applicability of the Act to cases where the presumptions of intoxication were utilized; however, it is not clear if this rejection was only intended to be applicable to criminal prosecutions, the matter before the court in *Todd*, or was to extend to *"any trial* arising out of acts supposedly committed by a person driving a vehicle while intoxicated." (Emphasis added.) *People v. Todd* (1975), 59 Ill. 2d 534, 544, 322 N.E.2d 447, 453.

In any event, the court that decided *Weaver* subsequently decided *Smock v. Highway Commissioner* (1978), 60 Ill. App. 3d 201, 376 N.E.2d 445, a civil action for damages. There, as here, a physician was allowed to testify that a blood alcohol test revealing a level of .262% alcohol would mean that the person was intoxicated. The blood sample was taken without consent. Without mention of its prior decision in *Weaver,* the court held that the decision of the supreme court in *People v. Todd* made applicable section 11—501 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—501) to any action, civil and criminal. (Accord *People v. Leffew* (1975), 33 Ill. App. 3d 700, 338 N.E.2d 480; *People v. Weissinger* (1980), 90 Ill. App. 3d 700, 413

N.E.2d 497.) Section 11—501(c) of the Act at that time, and at the time of the present occurrence, provided:

"(c) Upon the trial of any action or proceeding arising out of the acts alleged to have been committed by any person while driving *** under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood *** as shown by a chemical analysis *** is admissible, as provided hereinafter in this paragraph (c) ***.

* * *

3. *** Evidence based upon a chemical analysis of blood *** shall not be admitted unless such substance was procured and such analysis made with the consent of the person ***." Ill. Rev. Stat. 1973, ch. 95½, par. 11—501(c).

The basis for the exclusion of blood alcohol test evidence, where the test was procured without the person's consent, as noted in *Todd* and *Weissinger*, as well as other cases (see, *e.g.*, *People v. McHugh* (1984), 121 Ill. App. 3d 825, 460 N.E.2d 18; *People v. Palmer* (1983), 114 Ill. App. 3d 454, 448 N.E.2d 1005), rests in varying degrees on the belief that the general assembly has expressed a public policy that such tests, and evidence based thereon, should not be admitted without the consent of the person from whom the blood is taken.

The relevant statutory provisions were amended subsequent to the decisions in the above cases. In its present form, the language "upon the trial of any action or proceeding," has been deleted from section 11—501 which is expressly made applicable only to the criminal offense of driving under the influence of alcohol, other drug, or combination thereof. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.) Notwithstanding that section 11—501.2(a) of the Act retains the language, "[u]pon the trial of any civil or criminal action or proceeding," when dealing with the admissibility of the results of a blood alcohol test (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.2(a)), the supreme court has recently held that the strictures of section 11—501.2 apply only to prosecutions for driving under the influence and not to prosecutions for reckless homicide. (*People v. Murphy* (1985), 108 Ill. 2d 228, 483 N.E.2d 1288.) There the court held that the requirements of section 11—501.2, that the laboratory and technicians be certified by the Department of Public Health, were limited to prosecutions for driving under the influence.

The underlying facts in *Murphy*, although a criminal case, are much like those present in the instant cause. Murphy was involved in an automobile accident in which her passenger was killed. She was taken to a hospital where, in the course of emergency treatment, a

blood specimen was taken and analyzed by a medical technician. The circuit court granted her motion *in limine* to exclude from evidence the results of the blood alcohol test.

The decision in *Murphy* makes it abundantly clear that no public policy of this State bars the admission of evidence of intoxication based on the chemical analysis of a person's blood, taken without his consent, in a civil action, or in a criminal action except as expressly restricted by statute.

■ Perhaps the above review of prior case law is unnecessary, considering that the reference to "civil cases" in the statute was likely intended to refer only to ordinance violations. But for the holding of such cases as *Smock v. Highway Commissioner* (1978), 60 Ill. App. 3d 201, 376 N.E.2d 445, it was never reasonable to conclude that the restrictions on the admissibility of blood alcohol tests contained in the Illinois Vehicle Code, should apply to civil litigation where the question of intoxication or the consumption of alcoholic beverage was properly in issue.

Here, as noted in *Murphy*, ordinary standards governing admissibility should apply. While plaintiff argues that the foundation proof was inadequate, it parallels that present in *Murphy*, which the court noted was in substantial compliance with the standards of the motor vehicle act. Furthermore, no attempt was made to introduce the test results to raise a presumption of intoxication.

■ According to Dr. Kappel, the test was one upon which physicians customarily rely, as the content of alcohol, a sedative, in a patient's blood is of crucial importance in the administration of anesthesia. The test was never offered in evidence. Under *Wilson v. Clark* (1981), 84 Ill. 2d 186, 147 N.E.2d 1322, Dr. Kappel was properly allowed to express his opinion on the possible intoxication of plaintiff based on facts not in evidence if the test result alone was the type of matter upon which doctors customarily rely. Plaintiff was at liberty to show the unreliability of the test and the test result. In fact, the matter of plaintiff's consumption of alcohol was contested throughout the trial. We reject plaintiff's argument that Dr. Kappel's testimony was improperly admitted.

■ Plaintiff's second argument, that conduct of defense counsel prevented plaintiff from receiving a fair trial, is based on references to intoxication, and the argumentative nature of counsel's opening statement. We have concluded that evidence of alcohol consumption and intoxication was properly admitted. Objections to argument in counsel's opening statement were sustained and were not so prejudicial that we deem the remarks to have deprived plaintiff of a fair trial.

■ We have examined the instructions tendered and refused, and we conclude that no error resulted from the giving or refusal of any instruction. Several instructions were taken from the Federal Highway Administration regulations. We agree with the trial court that the regulations were not applicable to the facts of the case. Furthermore, we know of no authority, and none was cited, suggesting that it would ever be proper to give such instruction, particularly where the substance of the regulations was the subject of rules of the road contained in the Illinois Vehicle Code covered by Illinois Pattern Jury Instructions.

The judgment of the circuit court of Madison County is affirmed.

Affirmed.

HARRISON, J., concurs.

JUSTICE WELCH, dissenting:

I respectfully dissent in this case in light of the recent case of *Henry v. Brenner* (1985), 138 Ill. App. 3d 609, 486 N.E.2d 934. In *Henry v. Brenner*, the court found that the use of Federal Rule of Evidence 703 which was adopted by the Illinois courts in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, has a great potential for abuse. Rule 703 and the *Wilson v. Clark* holding allows experts to base their opinion on fact or data otherwise inadmissible so long as the expert can be found to rely on the inadmissible hearsay in giving his opinion. This case is illustrative of the potential for abusing the holding in *Wilson v. Clark*. I am in much agreement with the finding in *Henry v. Brenner* which states, "Like all exceptions to the hearsay rule, the full disclosure of the source underlying a testifying expert's opinion depends upon two critical factors of necessity and trustworthiness." (*Henry v. Brenner* (1985), 138 Ill. App. 3d 609, 615, 486 N.E.2d 934.) In this case, the facts reveal that the blood alcohol test allegedly performed on the plaintiff lacked any type of trustworthiness which amounts to a clear abuse of the *Wilson v. Clark* rule.

For one, the records revealing the chain of custody and exact procedures employed in taking the test are inherently suspect. The hospital technician did not recall who took the test. Further all the worksheets detailing the basis for the results and the procedure and method employed had been lost. Also, it is uncertain whether it was the plaintiff's blood alcohol which was tested in light of the fact that the treating physician did not order it or utilize it in the treatment of the plaintiff and the hospital did not obtain a "Continuity of Posses-

sion" form and "Informed Consent" form. Thus, a chain of custody for the record was not established.

Second, no one observed any evidence of alcohol or consumption of alcohol at the scene of the accident. The investigating police officer and the ambulance attendant did not observe any evidence of intoxication. A truck driver, who had traveled with the plaintiff during the night communicating on the C.B. radio stated that the plaintiff's driving was not erratic, plaintiff had not been drinking and that in his opinion the plaintiff was sober. Furthermore at the trial, the treating physician, Dr. Stephen Kappel, opined that the plaintiff was not intoxicated and if he had been he would have marked it in the records.

In addition, the accident happened at 5 a.m. The plaintiff arrived at the hospital at 8:15 a.m. but the blood alcohol test was not allegedly administered until 11:55 a.m. It is from that record of the suspect blood alcohol test that the doctor opined that the plaintiff had consumed an alcoholic beverage and was intoxicated four hours prior to the taking of the test. Thus, I find that the trial court not only abused its discretion but also abused the holding in *Wilson v. Clark.* In light of the foregoing facts, I would reverse the judgment of the circuit court of Madison County and remand the cause for a new trial consistent with this opinion.